COSTELL, Admr., Appellant,

v.

TOLEDO HOSPITAL, Appellee, et al.

[Cite as *Costell v. Toledo Hosp.* (1994), 98 Ohio App.3d 586.]

Court of Appeals of Ohio,
Lucas County.

No. L–93–245.

Decided Nov. 18, 1994.

588

*E.J. Leizerman,* for appellant.

*Rudolph A. Peckinpaugh, Jr.,* for appellee.

HANDWORK, Judge.

The basic facts of this medical malpractice case from the Lucas County Court of Common Pleas are that appellant, Frances Costell, sued appellee, Toledo Hospital, and several other parties,[1] alleging that Toledo Hospital and the other named parties gave substandard medical care to her late husband, Donald Costell. Donald Costell entered Toledo Hospital for heart surgery. The surgery was complete, and the surgeon had already left the operating room when Donald had a heart attack. Appellant alleges that the anesthesiologist, who was still in

---

1. The other parties include the anesthesiologist and the surgeon who rendered care to Donald Costell. They are not included as parties to this appeal, because the trial court granted Toledo Hospital summary judgment and indicated there was no just cause for delay of appeal. The case against the other parties therefore proceeds in the Lucas County Court of Common Pleas.

the operating room, failed to respond quickly enough. The surgeon returned to the operating room when he was located by hospital employees and informed of the situation. The surgeon was able to get Donald's heart beating again, but Donald had suffered a loss of oxygen to his brain, never recovered consciousness, and died in the hospital several months later.

This case has a long procedural history, which includes two previous appeals to this court and to the Supreme Court of Ohio. The result of the immediately preceding appeal was a reversal and remand. *Costell v. Toledo Hosp.* (1992), 82 Ohio App.3d 393, 406, 612 N.E.2d 487, 495. The basis of the reversal and remand was a finding by this court that (1) the trial court limited appellant's cross-examination of the former risk manager of the Toledo Hospital in a prejudicial way, and (2) the ruling of the trial court prohibiting appellant's attorney from using the terms "cover up" or "perjury" during opening statement to refer to .the alleged actions of the risk manager for Toledo Hospital of coercing hospital employees to change their testimony that three minutes went by from the time of Donald Costell's heart attack to the time of any response from the anesthesiologist in the operating room was unreasonable. *Id.* at 404–406, 612 N.E.2d at 494–495.

After the case was remanded to the Lucas County Court of Common Pleas, Toledo Hospital filed a motion for summary judgment in which it argued that it was entitled to judgment as a matter of law, because the evidence and law presented by appellant, Frances Costell,[2] (1) failed to meet the standards for demonstrating apparent agency between a hospital and a physician announced by the Supreme Court of Ohio in *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, (2) failed to show that Toledo Hospital had a duty to create policies or procedures regulating when a surgeon could leave an operating room, and (3) failed to show that hospital personnel did not act promptly enough in summoning the surgeon back to the operating room when his patient went into cardiac arrest following his departure.

Appellant opposed the motion for summary judgment, arguing that (1) the law of the case should be applied by the trial court to prevent the trial court from reconsidering the issue of whether the standard for apparent agency announced by the Supreme Court of Ohio was met by appellant, and (2) the evidence presented in the case showed that a dispute existed regarding the material issues of fact relating to whether an agency relationship existed between Toledo Hospital and the anesthesiologist who allegedly rendered substandard care to

---

2. Appellant appears individually and in her capacity as administrator of the estate of her late husband, Donald Costell.

appellant's late husband. The trial court ruled in favor of Toledo Hospital, and appellant brought this appeal to challenge that ruling.

Appellant has presented two assignments of error for our consideration. The two assignments of error follow:

"I. The trial court erred in granting the hospital's motion for summary judgment asthere [sic] existed a genuine issue of material fact regarding the agency relationship between the Hospital and Dr. Stevens.

"II. The trial court erred in refusing to apply the law of the case doctrine to the case at bar."

Ohio courts are governed by Civ.R. 56(C) when determining whether summary judgment must be granted in a case. Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

We must apply the standard announced in Civ.R. 56(C) to this case to determine whether summary judgment is appropriate.

We begin by considering the second assignment of error first. Appellant contends that the doctrine of the law of the case should have been applied by the trial court to prevent the reopening of the issue of whether the evidence was sufficient to establish an apparent agency between the anesthesiologist and Toledo Hospital. Appellant argues that exactly the same issue was raised and argued by Toledo Hospital on three separate occasions before the immediately preceding appeal was filed in this court on April 11, 1991.

The three separate occasions to which appellant refers are (1) a motion for summary judgment filed by Toledo Hospital on February 5, 1990, (2) a motion for a directed verdict presented by Toledo Hospital at the close of appellant's case-in-chief when this case went to trial, and (3) a renewed motion for a directed verdict presented by Toledo Hospital at the close of the evidence in defense of all the parties sued by appellant. Appellant contends that on each of the three occasions, Toledo Hospital argued that no agency existed, and relied upon the

rulings, first from this court, and then from the Supreme Court of Ohio, in *Albain v. Flower Hosp., supra,* 50 Ohio St.3d 251, 553 N.E.2d 1038; and *Albain v. Flower Hosp.* (Nov. 4, 1988), Lucas App. No. L–87–290, unreported, 1988 WL 118609. Appellant contends that Toledo Hospital was prohibited from raising the issue of agency by motion for summary judgment after the case was reversed and remanded by this court, and that the trial court's rulings on the motions for summary judgment and directed verdict which were made before the case was appealed, and ultimately reversed by this court, were binding, and could not be reconsidered or changed by the trial court after the case was reversed on appeal and remanded.

Toledo Hospital responds that exactly the same issue was not previously raised and argued in the trial court before the immediately preceding appeal was filed in this court. Toledo Hospital states that when the motion for summary judgment was filed in the trial court and was ruled upon, the binding decision was the decision from this court in *Albain v. Flower Hosp.* (Nov. 4, 1988), Lucas App. No. L–87–290, unreported, 1988 WL 118609. Toledo Hospital then argues that when an extraordinary circumstance occurs, such as an intervening decision from the Supreme Court, a trial court may disregard a previous decision. Toledo Hospital states that the decision from the Supreme Court of Ohio in *Albain v. Flower Hosp.,* 50 Ohio St.3d 251, 553 N.E.2d 1038, was an extraordinary circumstance.

This court has carefully reviewed the record and has determined that Toledo Hospital is correct that the decision from this court in *Albain v. Flower Hosp.* (Nov. 4, 1988), Lucas App. No. L–87–290, unreported, 1988 WL 118609, was the law which governed when the trial court denied the motion for summary judgment filed by Toledo Hospital prior to the trial of this case. However, the record also shows that appellant is correct that the decision of the Supreme Court of Ohio in *Albain v. Flower Hosp.,* 50 Ohio St.3d 251, 553 N.E.2d 1038, was released prior to the time this case went to trial, and was the law which governed when the trial court denied the two motions for a directed verdict that were made by Toledo Hospital. Furthermore, the record shows that Toledo Hospital was aware of the decision of the Supreme Court of Ohio, and based its arguments in support of the motion for a directed verdict upon the law established in the decision.

However, even assuming arguendo that the doctrine of the law of the case applied in this case,[3] an intervening decision from the Supreme Court of Ohio has

---

**3.** Interesting issues are raised by both parties regarding whether the doctrine of the law of the case applies to previous rulings by a trial court prior to reversal and remand of the case by an appellate court, and regarding whether the failure to contest the rulings of the trial court on appeal resulting in no pronouncement by the appellate court on the disputed issue when the appellate court reversed and remanded the case results in a waiver of the issue and in the

been issued, see *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, which would require the waiver of the application of the doctrine of law of the case, and which would permit the trial court to reconsider the issue of agency between the anesthesiologist and Toledo Hospital. Accordingly, we find appellant's second assignment of error not well taken.

We therefore proceed to consider the issues argued in support of the first assignment of error. Appellant argues that summary judgment was inappropriate in this case because she presented sufficient evidence to show that a material question of fact remains as to whether (1) a direct actual agency relationship existed between the anesthesiologist and Toledo Hospital, or (2) an apparent agency or agency by estoppel relationship existed between the anesthesiologist and Toledo Hospital. Appellee responds that (1) the issue of whether a direct actual agency exists was not argued or ruled upon in the trial court, and even if the issue was raised, the evidence shows no direct actual agency relationship existed between the anesthesiologist and Toledo Hospital; and (2) application of the ruling of the Supreme Court of Ohio in *Clark v. Southview Hosp. & Family Health Ctr.* requires a ruling that appellant has failed to present sufficient evidence to create a material issue of fact regarding an apparent agency or agency by estoppel relationship between the anesthesiologist and Toledo Hospital.

██ A careful review of the record shows that appellant did argue facts which relate to her assertion that a direct actual agency relationship exists between the anesthesiologist and Toledo Hospital. In her memorandum in opposition to the motion for summary judgment filed by Toledo Hospital in the trial court, appellant argued that Toledo Hospital is liable for the actions or inactions of the anesthesiologist because (1) the anesthesiologist was not only the anesthesiologist on the case, but "was also the medical director of the respiratory care unit of The Toledo Hospital"; and (2) the group which employed the anesthesiologist "was permitted, and in fact did, make out the anesthesia schedule for ALL patients from information supplied to them by other agents of the hospital." Appellant argued: "It is absurd for the hospital to contend that * * * [the anesthesiologist] was not its agent. Thus, there is every likelihood that * * * [the anesthesiologist], in fact, was representing The Toledo Hospital while in the operating suite." The opinion and judgment entry of the Lucas County Court of Common Pleas did not address the evidence and arguments relating to direct actual agency when it granted Toledo Hospital's motion for summary judgment, but the record shows that the evidence and arguments were presented, and are not now raised for the

application of the doctrine of the law of the case. However, we decline to address the merits of these arguments because the circumstances of this case make the argument irrelevant.

first time on appeal, as Toledo Hospital suggests. Accordingly, this court will consider the arguments raised by appellant which relate to the issue whether a material issue of fact exists concerning whether Toledo Hospital had a direct actual agency relationship with the anesthesiologist.

The primary distinguishing characteristic of an agency relationship is the right of the principal to control the conduct of the agent when the agent is performing work on behalf of the principal. See Restatement of the Law 2d, Agency (1958) 60–61, Section 14. By contrast, an independent contractor retains the ability to control how work is completed. *Councell v. Douglas* (1955), 163 Ohio St. 292, 56 O.O. 262, 126 N.E.2d 597, paragraph one of the syllabus. Toledo Hospital argues that the anesthesiologist in this case was an independent contractor because (1) the members of the anesthesiology group by which the anesthesiologist was employed were not employees of Toledo Hospital; (2) Toledo Hospital did not pay the anesthesiologist for any services he provided in the operating room; instead, the anesthesiology group which employed him billed the patient directly, and then paid the doctor; (3) Toledo Hospital did not control the manner in which the anesthesiologist practiced medicine; and (4) the mere supplying of information to the anesthesiologist group regarding when operations were scheduled to be performed in the hospital does not establish any right on the part of Toledo Hospital to control the manner of the performance of services by the anesthesiologist. Finally, Toledo Hospital acknowledges that the anesthesiologist is employed by the hospital as the Medical Director of Respiratory Care for Toledo Hospital, but contends that he was not acting in that capacity when he rendered anesthesiology services to appellant's late husband.

Ohio courts have consistently held that the granting of hospital privileges to a physician is not alone sufficient to show the creation of a direct actual agency relationship between the doctor and the hospital. See *Griffin v. Matthews* (1987), 36 Ohio App.3d 228, 231, 522 N.E.2d 1100, 1104. Lack of direct payment from a hospital to a physician for services rendered is also a factor considered by Ohio courts to determine that the physician has independent contractor status, rather than an agency relationship, with the hospital. *Nicholson v. Landis* (Feb. 27, 1990), Athens App. No. 1404, unreported, 1990 WL 34276. Accordingly, the first two factors argued by Toledo Hospital to show that the anesthesiologist was not an actual agent in this case have merit.

The remaining factors argued by Toledo Hospital, all relating to the lack of control over the manner in which the anesthesiologist performed his work, also have merit. The anesthesiology group by which the anesthesiologist was employed had the control over when and how the anesthesiologist performed his work. The anesthesiology group had the power to choose whether to schedule the anesthesiologist for any operations at Toledo Hospital. The employment of the anesthesiologist by Toledo Hospital in the capacity of Medical Director of

Respiratory Care does not make the hospital liable for the actions undertaken by the anesthesiologist when he was not acting in his capacity as the Medical Director of Respiratory Care. Accordingly, we find that the record shows that the undisputed facts, when viewed in a light most favorable to appellant, could only lead reasonable minds to conclude that, as a matter of law, no direct actual agency relationship existed between Toledo Hospital and the anesthesiologist when he rendered medical care to appellant's late husband.

■ We next consider appellant's contention that even if no direct actual agency existed in this case, the evidence presented creates a material issue of fact relating to whether an apparent agency or agency by estoppel existed between Toledo Hospital and the anesthesiologist when the anesthesiologist rendered medical care to appellant's late husband. Both appellant and appellee have filed supplemental briefs in this court to address how *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 628 N.E.2d 46, which establishes the test for agency by estoppel, applies to this case.

The syllabus from *Clark v. Southview Hosp. & Family Health Ctr.* provides:

"A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care."

Appellant argues that the evidence in this case meets both parts of the test announced in the *Clark v. Southview Hosp. & Family Health Ctr.* syllabus. She states that Toledo Hospital held itself out as providing medical services, and that the evidence shows that her late husband relied upon the hospital to provide anesthesia services. In support of her contentions, she points to testimony given by her son relating to events which occurred in her late husband's hospital room just prior to surgery.

The son testified that between twenty and thirty family members were gathered in his father's hospital room when a nurse, dressed in green or blue scrubs, entered the room. The son stated that the family members were talking with the nurse and with his father about the surgery. One member of the family asked who the anesthesiologist would be, and the nurse responded that she did not know, that it would be a hospital anesthesiologist.

Appellant also points out that the evidence shows that the anesthesiologist never met her late husband until her late husband was wheeled into the operating room for his surgery, a fact which reinforced the belief of the patient that the anesthesiologist was employed by and provided by the hospital.

■ Toledo Hospital argues that *Clark v. Southview Hosp. & Family Health Ctr.* is distinguishable from this case, and that the test announced in *Clark* is

inapplicable to this case. Toledo Hospital states that the rule of law announced in *Clark* can be applied only when the doctor who is sued was an employee of the hospital, or when the patient was treated in an emergency situation. Toledo Hospital also contends that if *Clark* does apply to this case, appellant has not shown that Toledo Hospital engaged in an extensive advertising campaign advising the public that it is the provider of anesthesia services, so appellant has failed to meet the first part of the test announced in the syllabus of *Clark*.

We have carefully read *Clark* and agree with Toledo Hospital that in *Clark* the patient was treated in an emergency room. *Id.*, 68 Ohio St.3d at 435, 628 N.E.2d at 46–47. However, we do not agree with the assertion by Toledo Hospital that the test announced in *Clark* applies only to emergency room cases. Nothing in the syllabus indicates any intention on the part of the Supreme Court of Ohio to limit the application of its ruling to emergency room cases. Accordingly, we reject the contention of Toledo Hospital that the test established in *Clark* should not be applied to this case, and we turn our consideration to the arguments regarding what the evidence in this case shows when the test announced in *Clark* is applied.

■ Toledo Hospital first argues that *Clark* establishes a requirement that a plaintiff suing a hospital must show that the hospital conducted an extensive advertising campaign relating to a particular type of medical service provided by the hospital in order for the plaintiff to establish that the hospital "holds itself out to the public as a provider of medical services". While it is true that the facts in *Clark* showed that the hospital in that case conducted an extensive advertising campaign to advise the public that it provided emergency room services twenty-four hours a day, *id.*, 68 Ohio St.3d at 436, 628 N.E.2d at 47, the syllabus by the Supreme Court and the discussion in the decision of the majority do not state that the only way a hospital can hold itself out to the public as a provider of medical services is through an extensive advertising campaign. *Id.*, 68 Ohio St.3d at 436, 444–445, 628 N.E.2d at 47, 52–53.

Appellant's late husband was responsible for arranging an appointment with his surgeon to undergo a physical exam, and for choosing the surgeon who would perform the heart surgery. Appellant's late husband never had to make an appointment with the anesthesiologist and never had to make an affirmative choice about who would be the anesthesiologist at the surgery. Indeed, as appellant points out, her late husband never met the anesthesiologist until he entered the operating room. The Tenth District Court of Appeals of Ohio considered very similar facts in a case presented to it in 1984, and made the following observations:

"The patient has no opportunity to solicit information about the anesthesiologist's qualifications and reputation as he would in choosing a surgeon or a doctor

in private practice but must rely upon the hospital to furnish him anesthesia services. Thus, from the patient's perspective, there is no separateness between the anesthesiologist and the hospital." *Stratso v. Song* (1984), 17 Ohio App.3d 39, 46, 17 OBR 93, 100, 477 N.E.2d 1176, 1185.

We agree with the analysis of the Tenth District Court of Appeals, and hold that reasonable minds could determine that, as a matter of law, appellant has demonstrated that the hospital held itself out as providing medical services, and that appellant's late husband could have reasonably believed that the medical services included anesthesia services.

Toledo Hospital next argues that the testimony about statements made by a scrub nurse is unreliable because the son could not remember whether the scrubs worn by the nurse were green or blue, and because the son could not describe the nurse, other than to state that she was Caucasian. Toledo Hospital argues there is no evidence to show that appellant's late husband ever heard or relied upon the statements made by the nurse, and that the failure of the anesthesiologist to meet the patient prior to surgery is not enough to show reliance by the patient upon any representations. Toledo Hospital therefore contends that the second part of the test announced in the *Clark* decision is not met in this case, since there is no evidence to show that appellant's late husband looked "to the hospital, as opposed to the individual practitioner, to provide competent medical care." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 628 N.E.2d 46, syllabus. The unreliability of the testimony goes to the credibility of the witness, which can be judged by the trier of fact, see *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276, and, as we have noted, the evidence is sufficient to allow reasonable minds to reach different conclusions about whether appellant's late husband looked to Toledo Hospital, rather than to the individual anesthesiologist, to provide competent medical care.

Therefore, we find that there is a genuine issue as to a material fact, and that when the evidence is construed in a light most favorable to appellant, reasonable minds could reach different conclusions as to whether appellant has proved the elements required for a hospital to be held liable under the doctrine of agency by estoppel. The requirements for summary judgment established in Civ.R. 56(C) are not met in this case. Appellant's first assignment of error is well taken.

The judgment of the Lucas County Court of Common Pleas is reversed, and this case is remanded for further proceedings consistent with this opinion. Toledo Hospital is ordered to pay the court costs of this appeal.

*Judgment reversed.*

ABOOD, P.J., and SHERCK, J., concur.