DECISION AND JUDGMENT ENTRY
This is an appeal from the decision of the Jackson County Court of Common Pleas which granted the motion for summary judgment of Defendant-Appellee Oak Hill Community Medical Center, Inc.
Plaintiff-Appellant Cindy Carter, Administrator of the Estate of Kenneth Carter, argues that the trial court erred because there remains a question of material fact as to whether a pathologist, by way of the doctrine of agency by estoppel, was the apparent agent of appellee. We agree and reverse the decision of the trial court.
 STATEMENT OF THE CASE AND FACTS
The facts relevant to this appeal surround a claim of medical malpractice.
In December 1992, Kenneth Carter (decedent) was taken by ambulance to the emergency room of Defendant-Appellee Oak Hill Community Medical Center, Inc., in Oak Hill, Ohio. There, he was diagnosed with appendicitis and an emergency appendectomy was performed.
After decedent's appendix was removed, it was sent to Holzer Clinic, Inc. (Holzer Clinic), in Gallipolis, Ohio, for pathological evaluation. There, Robert Althaus, M.D., a pathologist, examined the appendix and made no significant findings.
Four years later, in August 1996, decedent was diagnosed with abdominal cancer. Shortly thereafter, he died.
In September 1999, decedent's spouse, Plaintiff-Appellant Cindy Carter, filed a complaint in the Jackson County Court of Common Pleas against Holzer Clinic, Dr. Althaus, Holzer Medical Center (HMC), and appellee. Appellant argued in her complaint that had Dr. Althaus properly examined decedent's appendix in 1992 he would have discovered the cancer and decedent, with early treatment, could have survived.
Appellant's liability theories for each of the defendants was as follows: Dr. Althaus was liable because he was negligent in examining decedent's appendix; Holzer Clinic and HMC were liable since they directly employed Dr. Althaus; and appellee was liable because they held themselves out as a full-service hospital — a theory based on the doctrine of agency by estoppel.
Subsequently, Holzer Clinic and Dr. Althaus reached an out-of-court agreement with appellant and were dismissed from the lawsuit. The case proceeded against the remaining defendants.
Shortly before trial, HMC and appellee each filed a motion for summary judgment. Appellee attached to its motion the depositions of expert witnesses and Dr. Althaus, as well as a copy of the complaint.
In response, appellant filed a motion contra to appellee's and HMC's summary-judgment motions. Attached to this motion was an affidavit of appellant and a brochure and advertisement published by appellee.
The trial court granted summary judgment to both defendants.
Appellant now appeals the lower court's grant of summary judgment to appellee; appellant does not appeal the award of summary judgment to HMC.
Appellant assigned the following error for our review.
THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE, OAK HILL COMMUNITY MEDICAL CENTER, INC., BECAUSE THERE WAS A QUESTION OF FACT AS TO WHETHER ROBERT ALTHAUS, M.D., A PATHOLOGIST WHO PERFORMED CONTRACT PATHOLOGY SERVICES FOR OAK HILL COMMUNITY MEDICAL CENTER, INC., WAS AN APPARENT AGENT OF THE HOSPITAL AS THE SAME IS DEFINED IN CLARK V. SOUTHVIEW HOSPITAL (1994) 68 OHIO ST. 3d 435.
 ANALYSIS
Appellate review of a trial court's ruling granting a summary-judgment motion is de novo. See Wille v. Hunkar Laboratories, Inc. (1998),132 Ohio App.3d 92, 724 N.E.2d 492; accord Lee v. Sunnyside Honda
(1998), 128 Ohio App.3d 657, 716 N.E.2d 285. Accordingly, we must evaluate, wholly independent of the trial court's determination, whether appellee's summary-judgment motion should have been granted.
The test to be applied in summary-judgment cases is well settled. The Supreme Court of Ohio, in Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 696 N.E.2d 201, explained the appropriate analysis as follows.
Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id. at 370, 696 N.E.2d at 204.
Appellant argues that the first prong of the Zivich analysis has not been met; that is, appellant maintains that a genuine issue of material fact remains to be determined.
 I. Agency-By-Estoppel Jurisprudence
At the outset, we note that appellee has thoroughly confused the appropriate analysis to be applied in agency-by-estoppel cases. The Supreme Court of Ohio in Clark v. Southview Hosp. Family Health Ctr. (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, has significantly altered this area of jurisprudence. Nevertheless, appellee persisted in arguing pre-Clark case law in its memorandum supporting its summary-judgment motion and in its brief to this Court. Accordingly, we will briefly examine this area of law before and after Clark.
 A. Before Clark: The Albain Test
Under the doctrine of respondeat superior, a hospital as an employer can be held vicariously liable for the torts of its employees or agents. See Costell v. Toledo Hospital (1994), 98 Ohio App.3d 586, 649 N.E.2d 35. Generally, this doctrine does not apply to an independent contractor over whom an employer retains no right to control "the mode and manner of doing the work contracted for." Councell v. Douglas (1955),163 Ohio St. 292, 126 N.E.2d 597, paragraph one of the syllabus. However, "Ohio has adopted an agency-by-estoppel exception for hospital vicarious liability for negligence of independent practitioners with whom the hospital contracts, but over whom it retains no right to control."Deer v. River Valley Health Sys. (2001), Lawrence App. No. 00CA20, unreported, 2001 Ohio App. LEXIS 1670; see Councell v. Douglas,163 Ohio St. at 295-296, 126 N.E.2d at 599-600.
In Albain v. Flower Hosp. (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, the Supreme Court of Ohio definitively addressed agency by estoppel.
This court recognizes and approves the doctrine of agency by estoppel * * * as an exception to the independent contractor rule, whereby an employer may be liable for the negligence of an independent contractoronly if there has been some reliance by a third person upon therepresentations of the hospital that the physician is its employee oragent, and the injury to the third party was in some manner induced bysuch reliance. "The doctrine of agency by estoppel, as it might be invoked by a plaintiff in a tort action, rests upon the theory that onehas been led to rely upon the appearance of agency to his detriment. Itis not applicable where there is no showing of induced reliance upon anostensible agency."
(Emphasis added.) Albain v. Flower Hosp., 50 Ohio St.3d at 262,553 N.E.2d at 1049 (Holmes, J.; Moyer, C.J., Sweeney, Wright, Brown and Bryant, JJ., concur; Douglas, J., not participating; Bryant, J., sitting for Resnick, J.), quoting Johnson v. Wagner Provision Co. (1943),141 Ohio St. 584, 49 N.E.2d 925, paragraph four of the syllabus.
Accordingly, the Albain Court set forth a test that required a plaintiff to show: (1) that the hospital made "representations leading the plaintiff to believe that the negligent physician was operating as an agent under the hospital's authority"; and (2) that the plaintiff was "induced to rely upon the ostensible agency relationship." Id. at paragraph four of the syllabus.
 B. Albain Overruled; The Clark Test
In Clark v. Southview Hosp. Family Health Ctr.,68 Ohio St.3d at 435, 628 N.E.2d at 46, the Supreme Court of Ohio revisited the issue of agency by estoppel and abandoned the Albain test. In so doing, Justice Resnick, writing for the majority, reasoned as follows.
By requiring the patient/plaintiff in Albain to demonstrate that she would have refused care had she known of the independent status of the treating physician, we have created an exception that is so illusory that it forces the emergency patient to demonstrate that she would have chosen to risk further complications or death rather than be treated by a physician of whose independence she had been unaware. In addition, Albain
imposed the burden that the patient ascertain and understand the contractual arrangement between the hospital and treating physician, while simultaneously holding that her belief upon arrival that the hospital would provide her with a physician is insufficient. Thus, it is virtually impossible for the plaintiff, especially in a wrongful-death case, to establish reliance as required in Albain. * * * Albain is so much an aberration that its requirements, proposed elsewhere, have been called "astonishing," "absurd," "unfair," criticized for creating a "false dichotomy" between reliance on the apparent agency relationship and the hospital's reputation, and scoffed at for focusing on notice that comes "too little, too late."
Clark v. Southview Hosp. Family Health Ctr., 68 Ohio St.3d at 440,628 N.E.2d at 50.
Accordingly, the Clark Court fell in line with those cases that do not require induced reliance or proof that representations were made directly to the patient. See Rubbo v. Hughes Provision Co. (1941), 138 Ohio St. 178,34 N.E.2d 202; cf. Grewe v. Mt. Clemens Gen. Hosp. (Mich. 1978),273 N.W.2d 429. In overruling the Albain test, the Clark Court provided a new, two-pronged test that must be met for a plaintiff to be entitled to the agency-by-estoppel exception: (1) it must be established that the hospital held itself out to the public as a "provider of medical services"; and (2) "in the absence of notice or knowledge to the contrary," it must be demonstrated that the plaintiff looked to the "hospital, as opposed to an individual practitioner, to provide competent medical care." Clark v. Southview Hosp. Family Health Ctr.,68 Ohio St.3d at 436, 628 N.E.2d at 47, at the syllabus.
The Clark Court reasoned that this new test was more sensible than theAlbain test because, "[u]nless the patient merely viewed the hospital as the situs where her physician would treat her, she ha[s] a right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable." Id.
We note that the Clark test has not been received without criticism. Indeed, there were two vehement dissents in Clark: one penned by Chief Justice Moyer, the other by former Justice Wright.[1] Both justices focused on the expansive nature of the new test.
Chief Justice Moyer reasoned as follows.
In its attempt to mitigate the perceived harshness of [Albain], the majority swings the pendulum so far to the other side as to make a hospital the virtual insurer of its independent physicians. * * * The majority cites approvingly to [Rubbo], for the proposition that the hospital need only make a representation to "a class of persons of whom the plaintiff is one." Does this require that the plaintiff even be aware of the representation? Does the "holding out" of the hospital require any specific representations about the emergency room? As to the second prong of the newly announced test, what constitutes "notice or knowledge to the contrary?" The majority has indicated that a sign in the emergency room is not sufficient. Will disclaimers in the hospital's brochures and advertisements be sufficient? Will a hospital be able to insulate itself by promoting, for instance, "the excellent care provided by its independent staff physicians?"
Clark v. Southview Hosp. Family Health Ctr., 68 Ohio St.3d at 446,628 N.E.2d at 54 (Moyer, C.J., dissenting, Sweeney and Wright, JJ., concurring).
Justice Wright wrote separately only to add that, "From this day on no malpractice action evolving out of an incident within a hospital will be brought without joining the medical facility as a co-defendant * * *. In this period of burgeoning costs to the medical consumer the majority has surely taken a step backwards." Clark v. Southview Hosp. Family HealthCtr., 68 Ohio St.3d at 446, 628 N.E.2d at 54 (Wright, J., dissenting).
Likewise, myriad commentators have criticized the Clark test.
The Ohio Supreme Court manifested its belief in the deep pocket theory in [Clark]. * * * In essence, the Clark decision renders hospitals strictly liable for negligent acts of physicians providing medical care within a hospital. The only apparent exception under Clark is where a patient and her personal physician independently choose a hospital as a situs for medical treatment. * * * Clearly it is questionable whether this decision furthered public policy. * * * The court based its test on numerous such decisions from jurisdictions across the country. However, the legal soundness of Clark and the decisions on which it relied is questionable, as many of these jurisdictions misapplied the legal doctrines underlying [agency-by-estoppel] theory.
Note, Clark v. Southview Hospital: Ohio Follows the Nationwide Trend of Using Agency by Estoppel to Impose Strict Liability On Hospitals (1995), 9 J.L. Health 319, 320; see Note, The Ostensible Agency Doctrine: In Search of the Deep Pocket? (1989), 57 UMKC L.Rev. 917, 924 (The author notes that, "Despite its wide acceptance and apparent simplicity, the doctrine has evoked confusion, and many courts have used different language to describe the same phenomenon."); accord Fehn, Are We Protected From HMO 1 Negligence?: An Examination of Ohio Law, ERISA Preemption, and Legislative Initiatives (1997), 30 Akron L.Rev. 501; cf. Perdue Baxley, Cutting Costs — Cutting Care: Can Texas Managed Health Care Systems and HMOs Be Liable for the Medical Malpractice of Physicians? (1995), 27 St. Mary's L.J. 23, 88.
 II. Application of Clark
While we may well be inclined to agree with the criticism of Clark, we are nevertheless bound by the decision of the Ohio Supreme Court. See, e.g., Smith v. Simpson (1959), 111 Ohio App. 36, 37, 170 N.E.2d 433,434; see Whiteside, Ohio Appellate Practice (2001 Ed.) 38, Section 1.48.
Accordingly, we must apply Clark to the case sub judice.
 A. The First Prong
We begin by discussing the first prong of the Clark test; whether it was established that the hospital held itself out to the public as a "provider of medical services." Clark v. Southview Hosp. Family HealthCtr., 68 Ohio St.3d at 444, 628 N.E.2d at 53.
Appellant argues that the first prong of Clark is met because, "the literature from [appellee] and the affidavit of [appellant] set[ting] forth that [appellee] held itself out to the public as a provider of medical services." Attached to appellant's motion contra to appellee's summary-judgment motion were copies of appellee's brochure and advertisement.
The attached brochure touts appellee as being a "provider of primary health care services," while the advertisement states that appellee offers "medical/surgical" services and "24 hour emergency care."
In response, appellee relies on case-law predating Clark, and argues that "There is nothing in [appellee's] brochures and ads that suggest that it is a [full-service] hospital, or that would induce reasonable minds to conclude that pathology services are performed in-house * * *."
As we have explained, the Clark Court specifically overruled Albain and the line of cases that required induced reliance or proof that representations were made directly to the patient. See Clark v. SouthviewHosp. Family Health Ctr., 68 Ohio St.3d at 444, 628 N.E.2d at 53; accord Rubbo v. Hughes Provision Co., 138 Ohio St. at 178,34 N.E.2d at 202; cf. Grewe v. Mt. Clemens Gen. Hosp., 273 N.W.2d. at 429.
Moreover, Clark "[does] not state that the only way a hospital can hold itself out to the public as a provider of medical services is through an extensive advertising campaign." Costell v. Toledo Hospital (1994),98 Ohio App.3d 586, 649 N.E.2d 35.
Here, in addition to the brochure and advertisement, appellant also submitted an affidavit wherein she averred that "[appellee] has always held itself out to [appellant] and the members of her community that they were [sic] a full service provider of medical services."
Accordingly, having dismissed appellee's erroneous legal arguments, we are left with an unresolved factual issue: whether, based on the evidence proffered by appellant, she established that appellee held itself out to the public as a provider of medical services.
Therefore, we find that there is a genuine issue of material fact as to this issue. When the evidence is construed in a light most favorable to appellant, reasonable minds could reach different conclusions as to whether appellant has satisfied the first prong of the Clark test required for a hospital to be held liable under the agency-by-estoppel exception; in this regard, the requirements for summary judgment, set out in Civ.R. 56, are not met. See Zivich, supra.
 B. The Second Prong
Having found that the first prong of the Clark test was not met, we next address the second prong of the Clark test; whether, "in the absence of notice or knowledge to the contrary," it was demonstrated that the plaintiff looked to the "hospital, as opposed to an individual practitioner, to provide competent medical care." Clark v. SouthviewHosp. Family Health Ctr., 68 Ohio St.3d at 444, 628 N.E.2d at 53.
Here, appellee again relies on pre-Clark case law, arguing that appellant did not show induced reliance or proof that representations were made directly to the decedent. Again, Clark has done away with such requirements.
Further, appellee argues that "[t]he pathological review and analysis is a function far removed from the emergent situation [decedent] was in upon his arrival via emergency medical squad."
For purposes of Clark, it simply does not matter that the negligent physician was in a separate hospital or that the function of the physician was "far removed from the emergent situation." Rather, the focus of our analysis is whether decedent was apprised that the hospital contracted with physicians outside its hospital and, consequently, whether he looked to appellee to furnish pathological services. See, e.g., Stratso v. Song
(1984), 17 Ohio App.3d 39, 46, 477 N.E.2d 1176, 1185 ("The patient has no opportunity to solicit information about the anesthesiologist's qualifications * * * but must rely upon the hospital to furnish him anesthesia services. Thus, from the patient's perspective, there is no separateness between the anesthesiologist and the hospital."); accordCostell v. Toledo Hospital, 98 Ohio App.3d at 595, 649 N.E.2d at 41 ("We agree with [Stratso] and hold that reasonable minds could determine that, as a matter of law, appellant has demonstrated * * * that [her] late husband could have reasonably believed that the medical services included anesthesia services.").
"It is not determinative under the Clark analysis that the appellant believed his physicians were employees or agents of [the hospital], or that he did not specifically seek out care from [the doctor]. The key issue is whether he looked to the hospital for care, or merely viewed it as the situs for his treatment." (Emphasis added.) Wise v. QualifiedEmergency Specialists, Inc. (Dec. 17, 1999), Hamilton App. No. C-980802, unreported, citing Clark, supra.
In appellant's affidavit, which she submitted along with the brochure and advertisement, she averred the following.
At all times, [decedent] and [appellant] felt that all services including * * * pathology care would be handled by [appellee]. [Appellant] had no idea that [appellee] had contracted with Holzer Clinic to have pathology services performed. The first time that [appellant] had heard that [decedent's] appendix had been examined by [Dr. Althaus] was when [decedent] was diagnosed with cancer almost four years after the original surgery in 1992. * * * There were no notices, nor was [appellant] provided with any information that [appellee's] pathology services * * * were provided by individual practitioners. At all times [appellant] looked to [appellee] for [decedent's] care and [decedent] did so also.
Once again, we are left with an unresolved factual issue: whether, based on the evidence proffered by appellant, she established that, "in the absence of notice or knowledge to the contrary," decedent looked to the "hospital * * * to provide competent medical care." Clark v.Southview Hosp. Family Health Ctr., 68 Ohio St.3d at 444,628 N.E.2d at 53.
Therefore, we find that there is a genuine issue of material fact, and that when the evidence is construed in a light most favorable to appellant, reasonable minds could reach different conclusions as to whether appellant has proved the second prong of the Clark test; in this regard, the requirements for summary judgment, set out in Civ.R. 56, are not met. See Zivich, supra.
We SUSTAIN appellant's sole assignment of error.
 CONCLUSION
We note that appellee's brief, in large part, cites to cases that pre-date Clark and that apply the test set out in Albain, which Clark specifically overruled. While we caution appellee against presenting obsolete argument to this Court, we nevertheless express our frustration with the seemingly all-encompassing test set out in Clark.
For the foregoing reasons, we SUSTAIN appellant's assignment of error and REVERSE the judgment of the Jackson County Court of Common Pleas. The cause is REMANDED for further proceedings not inconsistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the JACKSON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.
[1] We note that both dissenters concurred in the judgment ofAlbain.