LADERER, Appellant,

v.

ST. RITA'S MEDICAL CENTER, Appellee.

[Cite as *Laderer v. St. Rita's Med. Ctr.* (1997), 122 Ohio App.3d 587.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–97–23.

Decided Sept. 9, 1997.

588

*James D. Godbey* and *George C. Rogers,* for appellant.

*Robert Balyeat,* for appellee.

THOMAS F. BRYANT, Judge.

This appeal is taken by plaintiff-appellant, Laurine (Stevens) Laderer from the judgment entered on a jury verdict for defendant-appellee, St. Rita's Medical Center. Appellant also appeals from the judgment entry overruling her motion for a new trial.

This medical malpractice action arose from complications associated with appellant's emergency cesarean operation performed by her obstetrician, Dr. Damschroder, during the early morning hours of Saturday, November 16, 1991, at St. Rita's Medical Center. Appellant was given general anesthesia by Dr. Clyde W. Conger, who improperly administered rapid-sequence induction and failed to maintain constant positive air pressure during appellant's intubation. This conduct caused appellant to aspirate vomit into her lungs and develop aspiration pneumonitis. The trial court directed the jury to find Dr. Conger negligent as to this injury suffered by appellant.[1]

In November 1991, appellant was expecting to deliver her child by a cesarean section, as her child appeared to be transverse breach. Dr. Damschroder scheduled her surgery for Monday, November 18, 1991, and informed appellant that an anesthesiologist would be scheduled from Anesthesia Associates to administer anesthesia to her. On Saturday morning at 2:50 a.m., however, appellant admitted herself into St. Rita's emergency room with ruptured membranes and early signs of labor. At approximately 3:50 a.m., St. Rita's nursing supervisor notified Dr. Damschroder of appellant's condition and also informed him that Dr. Conger was the anesthesiologist on call that morning. Damschroder ordered that Conger be called to assist him in appellant's cesarean surgery.

Upon being admitted to the hospital, appellant requested that an epidural anesthesia be administered to her so she could be awake during her baby's birth. Appellant specifically requested either Dr. Kim or Dr. Moon to administer the anesthesia. Drs. Kim and Moon were the two anesthesiologists from Anesthesia

---

1. Appellant dismissed Dr. Conger from this action with prejudice upon settlement with him. Dr. Damschroder was not named as a defendant by appellant in her compliant.

Associates whom appellant and Damschroder had previously discussed to perform the planned procedure on the following Monday. Appellant was informed, however, by the nurses attending to her, that they could contact only the "on call" anesthesiologist, Conger. Appellant was further advised that she could discuss her concerns with Conger upon his arrival.

Appellant, though not speaking to Conger until moments before surgery, asked him to give her an epidural instead of general anesthesia, which she had learned was the planned course of action. Conger responded that he was not going to give appellant an epidural based on his concern about the location of a Harrington rod in her spine. Appellant testified further that Conger also stated "not only that, I don't do epidurals." Appellant conceded that this later comment may have been made to her after surgery. At 4:10 a.m., appellant was taken into surgery and given general anesthesia improperly and suffered injury as a consequence.

Damschroder testified, through deposition, that appellant's medical charts indicated that she had desired an epidural that Saturday morning. Damschroder further stated that he knew that Conger very rarely performed epidurals, yet he nonetheless gave a telephonic order to have Conger called into the hospital upon learning that Conger was the on-call anesthesiologist that morning. Damschroder also stated that he did not discuss with Conger appellant's request for an epidural and that he "left the anesthetic choice up to the anesthesiologist who is responsible for providing the OB anesthesia care on the particular day."

Damschroder finally stated that he did not speak to the appellant about the mode of anesthesia that morning. Knowing that Conger would not perform an epidural, he "did not want to promise her that type of anesthetic if it wasn't going to be achievable." Damschroder stated later that "I don't want to put *my* anesthesiologist in a corner. I don't want to guarantee a patient a particular type of anesthetic, even if that's her personal preference, if that's not what the preference of the anesthesiologist doing the case is." (Emphasis added.)

Appellant had worked at another hospital in the Lima area, Lima Memorial Hospital, as a cafeteria worker and as a medical record transcriptionist. Appellant admitted that through her work she was aware of Anesthesia Associates and that they provided services for Lima Memorial Hospital. Appellant denied, however, knowing that Conger was associated with Anesthesia Associates.[2]

---

2. There is evidence in the record that appellant may have been on notice of the independent contractor relationship between Conger and St. Rita's. Plaintiff's Exhibit One included a document entitled "St. Rita's Medical Center Medical/Surgical Permit and Release of Information." This form was signed by appellant in the early morning hours of November 16, 1991 before her emergency treatment and states:

At the time Conger administered anesthesia to appellant he was employed by Anesthesia Associates of Lima, Inc. ("Anesthesia Associates"). St. Rita's had contracted with Anesthesia Associates to provide anesthesiology services to doctors and patients who used their hospital's facilities. Almost all anesthesiologists in Lima, fourteen of fifteen, worked for Anesthesia Associates in November 1991. An on-call list, created by Anesthesia Associates, was kept at the hospital, which disclosed the anesthesiologist Anesthesia Associates designated as the available doctor to be called into the hospital at any given moment over a twenty-four-hour period. Appellant stipulated at trial that the relationship between Conger and St. Rita's was that of an independent contractor, and not employee-employer.

Though appellant stated that she thought any anesthesiologist working in St. Rita's was employed by the hospital, she admitted on numerous occasions that she looked to her obstetrician, Damschroder, to take care of her anesthetic concerns. On cross-examination appellant testified:

"Question: Now let me ask you this, Laurie. When you—when you went to the hospital * * * on the morning of the 16th, did you believe that even though you were going in as an emergency patient, did you believe that someone at the hospital would call Doctor Kim, the physician who had been scheduled for the following Monday?

"Answer: Well, yes. I felt—I felt that that would be done. *I thought that that was something that Doctor Damschroder had taken care of arrangements on.*

"* * *

"Question: Okay. Did you think, Laurie, did you actually believe at the time, when you were in your room, that one—that the nurse or nurses, if there were more than one, that were coming in and out of your room taking care of you, did you actually believe that they were authorized, had the authority, to call Doctor Kim?

"Answer: Well, I don't know if I believed that. But I did tell them that, you know, I had talked to Doctor Damschroder and that we had discussed having Doctor Kim or Doctor Moon do an epidural on me. And, you know, I guess in my mind I would think that they would contact Doctor Damschroder about it to, you know—and check into it." (Emphasis added.)

---

"5. I understand that many of the physicians on the staff of this hospital, including my attending physician, are not employees or agents of the hospital, but rather are independent contractors who have been granted the privilege of using the Medical Center's facilities for the care and treatment of their patients."

Appellant testified later that she "couldn't understand why, if [Dr. Damschroder] knew that Dr. Conger didn't do epidurals why would *he* call Dr. Conger to do an epidural." (Emphasis added.)

Appellant's witness, Susan Degan, also testified to remarks made to her by appellant and indicated during cross-examination that appellant looked to Damschroder to take care of her anesthetic concerns.

"Question: Did [Laurine Laderer] indicate to you that she relied up [*sic*] Doctor Damschroder to make sure that there was an anesthesiologist at the hospital who could deliver an epidural?

"Answer: Yes, Sir."

The jury returned a general verdict in favor of St. Rita's and specifically, in response to three interrogatories, found that though Conger's malpractice caused all the injuries complained of by appellant, Conger was not an agent of St. Rita's when administering anesthesia to appellant and St. Rita's was not negligent in its care of appellant.

Appellant raises the following six assignments of error:

"1. The trial court erred in failing to grant plaintiff's motion for a directed verdict on the issue of the liability of St. Rita's Medical Center by agency by estoppel.

"2. The trial court erred in failing to grant plaintiff's motion of February 25, 1997 for a directed verdict on the issue that the asthma injury of Laurine Laderer was proximately caused by Dr. Conger's malpractice.

"3. The trial court erred in giving a jury instruction over the objection of plaintiff which used the phrase 'the patient looked to the hospital,' which phrase in the common meaning was inappropriate and misleading to the jury under the circumstances of this case.

"4. The trial court erred in refusing to give plaintiff's requested jury instruction on the issue of the liability of St. Rita's Medical Center for the malpractice of Dr. Conger as its on-call physician by agency by estoppel.

"5. The trial court erred in refusing to submit plaintiff's requested interrogatories to the jury which interrogatories would appropriately test the jury's factual findings concerning agency by estoppel liability.

"6. The trial court erred in overruling plaintiff's motion for a new trial requested on the basis of the five aforementioned errors and the verdict was contrary to the weight of the evidence, being all the evidence, and contrary to law based upon the undisputed evidence at trial, that Laurine Laderer was, pursuant to hospital policy, given no choice but to use the on-call physician, until taken into surgery, which creates agency by estoppel as a matter of law."

I. Appellant's first assignment asserts that the trial court erred in failing to direct a verdict in favor of appellant, holding St. Rita's vicariously liable for the malpractice of Conger under agency by estoppel.

▮ Though an employer or principal is generally vicariously liable for the torts of his employee or agent under *respondeat superior,* the negligence of an independent contractor is not attributable to a hiring party who retains no right of control over the mode and manner of the work performed by the hired person. *Councell v. Douglas* (1955), 163 Ohio St. 292, 56 O.O. 262, 126 N.E.2d 597; *Costell v. Toledo Hosp.* (1994), 98 Ohio App.3d 586, 593, 649 N.E.2d 35, 39.[3] If a hospital is to be held vicariously liable for the malpractice of a physician practicing therein, merely granting privileges to the physician is not enough to create a direct agency relationship between the hospital and the physician. *Costell,* 98 Ohio App.3d 586, 649 N.E.2d 35. The equitable doctrine of agency by estoppel, however, will estop a hospital from asserting the defense of an independent relationship with a physician when the two elements of representation and reasonable reliance are satisfied. *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46.

▮ *Clark v. Southview* held that agency by estoppel permits a hospital to be held vicariously liable for the negligence of an independent medical practitioner treating patients within the situs of a hospital "if [the hospital] holds itself out to the public as a provider of medical services and in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care." *Clark,* 68 Ohio St.3d at 444–445, 628 N.E.2d at 53.

*Clark v. Southview,* which reinstated a jury's verdict in favor of a tort plaintiff, modified the more demanding agency-by-estoppel test set forth in *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038. *Clark,* 68 Ohio St.3d 435, 628 N.E.2d 46. *Clark* reasoned that the *Albain* standard enabled a hospital to escape vicarious liability despite a patient's actual reliance on an apparent agency relationship merely because the patient was unable to point to specific representations made by the hospital inducing the patient's reliance. *Id.* at 439, 628 N.E.2d at 49. In response, *Clark* now presumes that a patient is induced to seek a hospital's care if a patient is able to point to any representation where it appears that the hospital held itself out as a provider of medical services to the general public. 68 Ohio St.3d 435, 628 N.E.2d 46.

---

**3.** *Costell* held that a material issue of fact existed as to whether the hospital was liable for the negligence of an independent anesthesiologist in a nonemergency operation. 98 Ohio App.3d 586, 649 N.E.2d 35.

■ Nevertheless, a patient must still carry the second element of agency by estoppel in hospital vicarious-liability cases, that of reliance. The "element of reliance is satisfied if the patient looks to the hospital, rather than a specific physician, to provide her with medical care." *Id.* at 444, 628 N.E.2d at 53. In *Clark*'s discussion of what constitutes reliance, quoted approvingly is the following language in *Grewe v. Mt. Clemens Gen. Hosp.* (1978), 404 Mich. 240, 273 N.W.2d 429. *Clark*, 68 Ohio St.3d at 439, 628 N.E.2d at 49. *Grewe* noted:

"[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor * * * [is] whether the hospital provided the plaintiff with [the treating physician] or whether the plaintiff and the treating physician had a patient-physician relationship independent of the hospital setting." *Grewe*, 404 Mich. at 251, 273 N.W.2d at 433.

■ An important qualification to the reliance test is reasonableness. *Clark*, 68 Ohio St.3d at 446, 628 N.E.2d at 54, fn. 1, quoting Note, Evolution of Hospital Liability: Wisconsin Adopts Apparent Agency (1990), Wis.L.Rev. 1129, 1147. A patient's actual reliance must be reasonable. *Id.* Accordingly, though a patient may actually rely on a hospital to provide competent medical care, a hospital may nonetheless avoid vicarious liability if the patient has notice or knowledge of the independent relationship between the hospital and the treating physician. *Id.*

*Clark* made clear, however, that "notice, to be effective, must come at a meaningful time." 68 Ohio St.3d at 445–446, 628 N.E.2d at 54. The court warned that merely posting signs in the emergency room regarding the relationship of physicians to the hospital "will rarely provide the patient with the ability to choose at a meaningful time." *Id.*[4]

Of course, if the hospital can show that a patient-plaintiff did not even look to the hospital in the first instance, proof of the patient's notice or knowledge will be immaterial, as there is no reliance to negate with evidence of unreasonableness. *Id.*

A directed verdict pursuant to Civ.R. 50(A)(4) will be granted when only "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."

---

4. *Clark* further stated that "informing [a patient] of the nature of the relationship after she arrives is too late. The purpose of the notice requirement is to impart knowledge sufficient to enable the plaintiff to exercise an informed choice." *Id.*, quoting Note, *supra*, 1990 Wis.L.Rev. at 1147.

■ The Supreme Court has noted that "[i]n addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion." *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255. Accordingly, " 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.' " *Clark,* 68 Ohio St.3d at 438, 628 N.E.2d at 48; quoting *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115, 4 O.O.3d 243, 244, 363 N.E.2d 367, 368.

■ After viewing the evidence most strongly in favor of St. Rita's, the nonmoving party, we find that the trial court properly found that a triable issue existed as to whether St. Rita's was vicariously liable for the malpractice of Conger under agency by estoppel.

■ Appellant argues that a directed verdict was warranted, as the evidence was undisputed that she did not have an opportunity to speak with Conger until she was being wheeled into surgery; thus, St. Rita's deprived her of any "meaningful choice" as to a treating physician. *Clark* does speak to giving patients notice of an independent contractor relationship to allow patients to make an "informed choice." *Id.* at 446, 628 N.E.2d at 54. Failing, however, to afford a patient a choice as to a treating physician in an emergency operation does not as a matter of law make a hospital vicariously liable for the malpractice of the treating physician under agency by estoppel. *Clark.*

An important distinction must be made between *knowing* one has a choice of a doctor and *enforcing* that choice once made. The former asks whether one knew of an independent contractor relationship—an important aspect of an agency-by-estoppel analysis. The latter, however, asks whether the hospital had a duty to honor a choice once made—a factor in a negligence action. As appellant's argument for a directed verdict on agency by estoppel claims to turn on what the hospital failed to do, relief may come only under negligence principles and not agency by estoppel.

Appellant's motion for a directed verdict was properly denied, as she failed to set forth a *"determinative issue* [upon which] reasonable minds could come to but one conclusion." (Emphasis added.) Civ.R. 50(A)(4).

Furthermore, the determinative issues upon which an agency-by-estoppel analysis turns were in dispute. Foremost, there was evidence that the appellant never actually looked to the hospital for competent medical care. St. Rita's claimed that appellant's 2:50 a.m. appearance in the emergency room with ruptured membranes was an emergency situation requiring immediate attention. Appellant, however, testified that she was not an emergency patient at all, but

rather merely a mother delivering early. This evidence demonstrates that the jury could find that appellant was not looking to the hospital to provide competent medical care during what appeared to be an emergency situation as in *Clark*, but rather was looking to her own obstetrician to care for her during her mere early delivery. *Clark*, 68 Ohio St.3d 435, 628 N.E.2d 46.

Furthermore, appellant stated several times that she looked to her obstetrician, Damschroder, to respond to her concerns about the type of anesthesia to be used and who was going to administer it. When appellant did communicate her anesthesia concerns to St. Rita's nurses, she was still looking to her obstetrician to take care of her, explaining, "I guess in my mind I would think that they would contact Doctor Damschroder about it." Appellant's witness Susan Degan also testified that appellant told her that she thought Damschroder would take care of appellant's anesthesia concerns.

There is also evidence that could establish that appellant was on notice of the independent relationship between Conger and St. Rita's. Appellant admitted that through her work at another area hospital and based on her conversations with her obstetrician, she was aware of the group Anesthesia Associates and that they provided anesthesia services to area hospitals. Further, though appellant claimed not to know that Conger was associated with Anesthesia Associates, fourteen of the fifteen practicing anesthesiologists practicing in Lima in November 1991 were employed by Anesthesia Associates, including Dr. Conger.

Finally, on November 16, 1991, sometime after admitting herself to St. Rita's emergency room, appellant signed a Medical/Surgical Permit Form that disclosed that "many physicians on the staff of this hospital, including my treating physician, are not employees or agents of the hospital, but rather are independent contractors." See footnote 2, above. Though such an eleventh-hour disclosure form will hardly ever be sufficient to establish notice as a matter of law,[5] this evidence was available for the jury to weigh.

St. Rita's presented sufficient evidence to allow reasonable minds to come to different conclusions upon the determinative issues of reliance and reasonable reliance, within an agency-by-estoppel analysis. The trial court properly denied the appellant's motion for a directed verdict. Appellant's first assignment of error is overruled.

■ II. Appellant's second assignment asserts that the trial court erred by failing to direct a verdict that Conger's malpractice caused her asthma injury. Appellant argues that her expert testified that Conger's malpractice caused her

---

5. See footnote 2, above.

asthma condition and, because this testimony was uncontroverted, the trial court should have directed the jury to so find pursuant to Civ.R. 50(A)(4).

Expert testimony is needed on complex issues outside the area of common knowledge, such as an injury's cause and effect. *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114. There was, however, some expert testimony to dispute appellant's theory of causation relating to her asthma condition. St. Rita's called Dr. Rick Watson, a pulmonologist, who testified to a reasonable degree of medical certainty that a person with asthma, like the appellant, could have developed a minor case of the disease earlier in life and not known she was afflicted. Though this testimony may not weigh as heavily as appellant's theory of causation, it is another explanation of the injury, and the jury was entitled to weigh it. The weight of evidence is not tested under Civ.R. 50(A)(4). *Wagner*, 77 Ohio St.3d 116, 671 N.E.2d 252. Sufficient evidence was adduced by St. Rita's to create a genuine issue of material fact upon which reasonable jurors could disagree as to the causation of appellant's asthma injury. Civ.R. 50(A)(4).

Furthermore, the jury affirmatively responded to the first interrogatory, which asked whether Conger's "negligence was the sole proximate cause of the plaintiff's injury or injuries." Accordingly, as the jury found that appellant's asthma injury was caused by Conger, any error would be harmless to appellant.

Second, as relating to St. Rita's, the jury found in response to Interrogatory No. 2 that Conger was not an "agent of St. Rita's Medical Center at the time he administered anesthesia to Laurine Stevens on November 16, 1991." Because this finding, as explained below, is neither contrary to law nor against the manifest weight of the evidence, any error concerning what injuries were caused by the negligence of Conger is harmless to St. Rita's, as no agency relationship was found to exist. Appellant's second assignment of error is overruled.

III. Appellant's third and fourth assignments of error shall be addressed together. Appellant claims that the trial court erred when instructing the jury as to the elements of agency by estoppel and further that the trial court should have replaced the submitted instruction with one tendered by appellant. Appellant contends that the trial court's instruction, which included a recitation of the syllabus in *Clark* containing the phrase "the patient looked to the hospital," was inappropriate and misleading to the jury. Appellant continues to misapply the doctrine in *Clark*, 68 Ohio St.3d 435, 628 N.E.2d 46.

The trial court incorporated the syllabus and other language from *Clark* within the jury instructions relating to agency by estoppel, instructing:

"Plaintiff must prove * * * that (1) St. Rita's held itself out as a medical service—medical service provider of medical services and (2) in the absence of

notice or knowledge to the contrary, the Plaintiff looked to St. Rita's Medical Center as opposed to Doctor Damschroder or Doctor Conger to provide competent medical care.

"* * *

"Unless the patient merely viewed the hospital as the site where her physician would treat her, she had a right to assume and expect that the treatment was being administered through hospital employees and that any negligence associated therewith would render the hospital liable.

"On the other hand, if you find by the greater weight of the evidence that the Plaintiff was on notice or had knowledge that care was being provided by independent medical practitioners and she looked to the individual practitioner or practitioners to provide competent medical care, then you must find for the defendant, St. Rita's Medical Center."

Jury instructions must be a correct statement of the law as applied to the particular facts of any case. *Little Miami Rd. Co. v. Wetmore* (1869), 19 Ohio St. 110, 1869 WL 35. Though instructions should be tailored to meet the facts in a case, such tailoring must be done so as not to alter the law which prompted the instruction in the first place.

Appellant contends that the instruction was prejudicial to her because "she was not looking to the hospital for medical care in the ordinary sense"; rather, "she was given no choice but to accept the hospital's medical care." Appellant's proposed instruction attempts to modify the test in *Clark* by offering that "they should find St. Rita's Medical Center liable for the actions of the on-call physician, Dr. Conger, if Laurine Laderer was given no choice by the hospital to get someone else prior to seeing Dr. Conger in the operating room." This proposed instruction is devoid of agency-by-estoppel elements and focuses on the conduct of St. Rita's—a negligence analysis. *Clark*, 68 Ohio St.3d 435, 628 N.E.2d 46.

Appellant continues to argue that *Clark* affixes vicarious liability under agency by estoppel where a patient's choice as to a treating physician was not honored. We do not read *Clark* so broadly. *Clark* discusses choice only in the context of explaining why affording a patient notice is important. See footnote 4, above. *Clark* did not add choice as an element in an agency-by-estoppel analysis.

Furthermore, notice is a factor in an agency-by-estoppel inquiry only where there is a finding the patient looked to the hospital for competent medical care in the first instance—meeting the element of actual reliance. *Id.* To remove the instruction that a patient must look to the hospital and replace it with a requirement that a hospital must honor a patient's choice as to a treating physician would remove the law of agency by estoppel and replace it with a

negligence inquiry. A hospital's refusal to honor a patient's choice of anesthesiologist in an emergency situation may be determined by a negligence action, but cannot be the basis for estoppel.

The trial court's instruction adequately sets forth the law for proof of vicarious liability of a hospital upon a theory of agency by estoppel for the purposes of this case.[6] Appellant's proposed instruction is not a correct statement of the law of agency by estoppel and was properly refused. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828. Appellant's third and fourth assignments of error are overruled.

■ IV. Appellant's fifth assignment claims that the trial court erred when refusing to submit to the jury appellant's handwritten interrogatories. Appellant cites Civ.R. 49(B), which states, "The court shall submit written interrogatories to the jury, * * * upon request of any party prior to the commencement of argument."

■ Though Civ.R. 49(B) is written with mandatory language, not every proposed instruction must be submitted to the jury. Interrogatories which are merely evidentiary in nature may be properly refused by a trial court. *Freeman v. Norfolk & W. Ry.* (1994), 69 Ohio St.3d 611, 635 N.E.2d 310. Further, a "court still has the discretion to reject interrogatories that are ambiguous, confusing, redundant or otherwise legally objectionable." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 259, 662 N.E.2d 1, 5.

The interrogatories sought by appellant were two:

"(1) Do you find that the staff of St. Rita's Hospital ever told plaintiff, Laurine Laderer, that Dr. Conger was an independent contractor?

"(2) Do you find that the staff of St. Rita's Hospital told plaintiff, Laurine Laderer, that she must use the on-call doctor, Dr. Conger?"

Both of the above-proposed interrogatories inquire about the jury's consideration of evidence. The first asked the jury to disclose a specific factual finding—whether the appellant was ever told Conger was an independent contractor. The

---

**6.** It must be noted that a portion of the trial court's instruction was not entirely correct where it stated:

"[I]f you find by the greater weight of the evidence that the Plaintiff was on notice or had knowledge that care was being provided by independent medical practitioners and she looked to the individual practitioner or practitioners to provide competent medical care, then you must find for the defendant, St. Rita's Medical Center." (Emphasis added.)

This portion of the instruction is stated in the conjunctive and should be in the disjunctive, in that where patient had notice or knowledge of the independent relationship *or* looked to the individual practitioner instead of the hospital, no vicarious liability attaches to the hospital. This misstated instruction was given properly in the disjunctive elsewhere and is harmless to appellant.

second also asks for a specific factual finding—asking again what appellant was told concerning Conger. The trial court did not abuse its discretion in refusing to submit these interrogatories to the jury. *Freeman,* 69 Ohio St.3d 611, 635 N.E.2d 310.

Further, the proposed interrogatories are not properly tailored to the law of agency by estoppel. As noted above, the two necessary elements in an agency-by-estoppel analysis are a representation and reasonable reliance thereon. *Clark,* 68 Ohio St.3d 435, 628 N.E.2d 46. Accordingly, merely asking the jury to state what appellant was told could not fully test the verdict, as appellant maintains. We find that the trial court did not abuse its discretion when refusing appellant's proposed interrogatories. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1. Appellant's fifth assignment of error is overruled.

V. Appellant's sixth assignment claims that the trial court erred when over-ruling appellant's motion for new trial, asserting that the verdict was against the weight of the evidence and contrary to law.

Appellant restates her aforementioned assignments of error, which were incorporated into her motion for new trial, overruled by the trial court. Appellant again argues that *Clark v. Southview, supra,* stands for the proposition that a patient's right to choose a physician, if violated, will cause vicarious liability to attach to the hospital that permitted the physician to treat the patient therein. Appellant's argument, as appellee points out, is phrased in the language of negligence. Questions concerning a hospital's wrongful conduct are not material in an agency-by-estoppel analysis, which attaches strict vicarious liability for *another's* breach of duty. *Clark,* 68 Ohio St.3d 435, 628 N.E.2d 46. This verdict was not contrary to the law of agency by estoppel.

Appellant also maintains that the verdict was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. The jury verdict herein was supported by competent, credible evidence. Appellant admitted that she was not looking to the hospital in the ordinary sense and that she did look to her obstetrician to provide her medical care during what she referred to as a nonemergency procedure. There was sufficient evidence to permit the jury to find that no agency-by-estoppel relationship existed between Conger and St. Rita's.

Competent, credible evidence was also presented to permit the jury to find that St. Rita's was not negligent in its emergency care of appellant. *Id.* The jury was entitled to believe the hospital's explanation as to why appellant's

preferred anesthesiologist was not called in to assist in her emergency cesarean operation at 4:00 a.m. First, appellant's physician, Damschroder, testified that he, not St. Rita's, was responsible for ordering Conger to come into the hospital. Further, St. Rita's nurses testified that hospital policy did not force appellant to have a specific physician, but in this emergency situation, they could contact only the on-call physician and permit the patient to raise her concerns with him. Evidence presented also shows that appellant's preferred anesthesiologist was not designated on hospital records as of November 16, 1991 to treat appellant. Accordingly, the jury could find that the hospital nurses would not have known whom to call even had they had a duty to do so. The jury's verdict is not against the manifest weight of the evidence.

Appellant's sixth assignment of error is overruled.

*Judgment affirmed.*

EVANS, P.J., and HADLEY, J., concur.