DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Jackson County Common Pleas Court summary judgment in favor of Holzer Medical Center — Jackson (Holzer), defendant below and appellee herein.
 {¶ 2} James K. Musick, plaintiff below and appellant herein, raises the following assignment of error:
"THE COMMON PLEAS COURT OF JACKSON COUNTY, OHIO ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFA-PPELLANT BY IMPROPERLY RULING UPON A MOTION FOR SUMMARY JUDGMENT THAT DR. DUTTA WAS NOT AN APPARENT AGENT OF HOLZER MEDICAL CENTER — JACKSON.
THERE REMAINS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER HOLZER MEDICAL CENTER — JACKSON IS LIABLE FOR THE ACTS OF DR. DUTTA UNDER THE AGENCY-BY-ESTOPPEL RULE SET FORTH IN CLARK V.SOUTHVIEW HOSP. FAMILY HEALTH CTR. (1994), 68 OHIO ST.3D 435, 628 N.E.2D 46."
 {¶ 3} On June 17, 2002, appellant presented to the emergency room at Holzer in a weakened condition following a surgery performed the previous month. After the emergency room physician initially assessed appellant, the physician called Dr. Nirmil K. Dutta, who was on call, to discuss appellant's condition. Dr. Dutta advised the ER physician to admit appellant as a patient in the hospital.
 {¶ 4} Mrs. Musick stated that neither she nor appellant contacted Dr. Dutta for care. Instead, the ER doctors informed her that she could choose either Dr. Raoni or Dr. Dutta to treat her husband. She told the doctors that "Raoni is not touching him." She chose Dr. Dutta because he had operated on her mother sometime in the 1980s.
 {¶ 5} Appellant stayed at Holzer under Dr. Dutta's care until June 23, 2002, when he was transferred to the Ohio State University Medical Center. The next day, he had surgery to drain a lumbar abscess that developed at the site of his previous surgery. After the surgery, a physician informed Mrs. Musick that appellant had a staph infection which developed into an abscess that may render appellant unable to walk. The physician stated that Dr. Dutta did not properly treat the infection and that if he had done so, the problem could have been avoided.
 {¶ 6} On November 3, 2003, appellant and his wife filed a medical malpractice and loss of consortium complaint against Dr. Dutta, Oak Hill Surgical Practice, and the Holzer Medical Center-Jackson. On February 16, 2005, Holzer argued that it cannot be held liable for Dr. Dutta's negligence and requested summary judgment. It contended that Dr. Dutta is an independent medical practitioner and that appellant could not establish the criteria for holding it liable for an independent medical practitioner's negligence under the agency by estoppel doctrine set forth in Clark v. Southview Hosp. (1994),68 Ohio St.3d 435, 628 N.E.2d 46.
 {¶ 7} In response, appellant asserted that genuine issues of material fact remained regarding the agency by estoppel doctrine. Appellant claimed that Holzer held itself out to the public as a provider of medical services and that he looked to the hospital to provide treatment, rather than to a particular doctor.
 {¶ 8} Holzer's reply memorandum included Dr. Dutta's affidavit and states that he was appellant's attending physician. He further states:
"I am a private attending physician and a member of the Medical Staff at Holzer with surgical privileges. As such, I am not an employee of Holzer. Holzer does not control or direct the medical care and treatment that I provide to patients.
I provide direct care and treatment to patients in my capacity as a private attending physician. I provided such care to James F. Musick as a private attending physician during his admission to Holzer from June 17, 2002 through June 23, 2002. Holzer did not control or direct the medical care and treatment that I provided to James F. Musick during his admission to Holzer. Holzer did not pay me for the medical care and treatment that I provided to James F. Musick during his admission to Holzer."
Holzer asserted that because appellant failed to offer evidence to rebut Dr. Dutta's evidence, summary judgment in its favor was proper.
 {¶ 9} On June 10, 2005, the trial court determined that appellant failed to present evidence rebutting Holzer's argument, specifically Dr. Dutta's affidavit, and granted Holzer summary judgment. Appellant timely appealed the trial court's judgment.
 {¶ 10} In his sole assignment of error, appellant asserts that the trial court improperly determined that Holzer cannot be liable for Dr. Dutta's negligence. He contends that genuine issues of material fact remain regarding the agency by estoppel doctrine including whether (1) Holzer held itself out to the public as a provider of medical services, and (2) in the absence of notice or knowledge to the contrary, appellant looked to the hospital, rather than an individual practitioner, to provide competent medical care. Appellant asserts that he "had no prior relationship with Dr. Dutta. He had not been receiving ongoing advice or treatment from him. In an emergency situation, he went to the nearby hospital seeking treatment. The fact that his wife, after admission to the hospital, chose one surgeon over another for his treatment did nothing to change that. That Dr. Dutta had previously operated on a member of Mr. Musick's family is not evidence or a prior physician-patient relationship."
 {¶ 11} Holzer asserts that appellant cannot establish either of the Clark requirements: "Although [appellant] did not have a prior relationship with Dr. Dutta, his wife knew Dr. Dutta and selected him (instead of Dr. Raoni) when discussing the issue with the emergency department physicians at Holzer on June 17, 2002. Mrs. Musick, who was obviously making decisions on behalf of her husband, requested Dr. Dutta because he had worked on her mom in the past without any problems."
 {¶ 12} When reviewing a trial court's summary judgment decision, an appellate court conducts a de novo review. See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate. We need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 13} Civ.R. 56(C) provides, in relevant part, as follows:
* * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g.,Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30,674 N.E.2d 1164.
 {¶ 14} In the case at bar, the parties dispute whether genuine issues of material fact remain regarding the doctrine of agency by estoppel as set forth in Clark v. Southview Hosp. Family Health Ctr., 68 Ohio St.3d 435, 628 N.E.2d 46, syllabus. In Clark, the Ohio Supreme Court stated:
"A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care."
Id., syllabus. In reaching its decision, the court further explained: "Unless the patient merely viewed the hospital as the situs where her physician would treat her, she had a right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable." Id. at 445. The court additionally found the following quotation from Grewe v. Mt.Clemens Gen. Hosp. (1978), 404 Mich. 240, 273, 273 N.W.2d 429, helpful in explaining its decision:
"`[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the treating physician] or whether the plaintiff and [the treating physician] had a patient-physician relationship independent of the hospital setting.'"
Id. at 439
 {¶ 15} In Clark, the patient presented to the hospital emergency room suffering from an asthma attack. Less than six hours later, she was pronounced dead, allegedly the result of negligent medical care that the emergency room doctor, Dr. Thomas Mucci, an independent contractor, provided. The patient's mother filed a complaint against, inter alia, the hospital.
 {¶ 16} At trial, the hospital requested a directed verdict on the issue of agency by estoppel. The trial court denied it and the jury returned a verdict in the plaintiff's favor. The appellate court, however, reversed the judgment. It determined that the trial court should have directed a verdict in the hospital's favor. The appellate court concluded that reasonable minds could not conclude that the doctor was the hospital's apparent agent.
 {¶ 17} Subsequently, the Ohio Supreme Court reversed the appellate court's judgment. It determined that the hospital held itself out to the public as a provider of medical services and that nothing in the record suggested that the patient knew that the care she received was from an independent contractor merely using the hospital premises. The supreme court found that the testimony revealed that the patient looked to the hospital to provide her care.
 {¶ 18} In the case at bar, Holzer disputes both that it held itself out to the public as a provider of medical services and that appellant looked to the hospital, as opposed to Dr. Dutta, to provide him with competent medical care.[1]
 A HOLZER HELD ITSELF OUT TO THE PUBLIC AS A PROVIDER OF MEDICAL SERVICES {¶ 19} Appellant asserts that Carter v. Oak Hill Comm. Med.Ctr., Inc., Jackson App. No. 00CA23, 2001-Ohio-2657 is dispositive of the issue in the instant case. We do not believe that a finding in Carter that Holzer held itself out to the public as a provider of medical services must necessarily apply in this case as well. In Carter, this court's plurality opinion, in which two judges concurred in judgment only, held that Holzer held itself out to the public as a provider of medical services.
 {¶ 20} However, the fact that Holzer is a provider of medical services and holds itself out to the public as such "is so obvious that it needs no discussion." See Cox v. Ohio StateUniv. Hosp. (1996), 117 Ohio App.3d 254, 258, 690 N.E.2d 552
(holding that the fact that OSU hospital holds itself out to the public as a provider of medical services "is so obvious that it needs no discussion").
 {¶ 21} Consequently, appellant has established a genuine issue of material fact remains regarding the first part of the agency by estoppel doctrine.
 B GENUINE ISSUES OF MATERIAL FACT REMAIN REGARDING WHETHER APPELLANT LOOKED TO THE HOSPITAL FOR CARE {¶ 22} Holzer contends that no genuine issue of material fact remains regarding whether appellant looked to it for care because appellant's wife chose Dr. Dutta to care for her husband once the emergency room physicians advised her that either Dr. Dutta or Dr. Raoni could treat her husband. We do not agree.
 {¶ 23} Our colleagues in the First Appellate District have considered a case with facts similar to the case at bar. InVanderpool v. University Hosp., Inc., Hamilton App. No. C-020020, 2002-Ohio-5092, Vanderpool had been a patient at a gynecology clinic that the hospital operated. Residents managed the clinic and treated the patients under the supervision of faculty from the OB-GYN department at the University of Cincinnati's College of Medicine. While a patient at the clinic, Vanderpool saw several different doctors for chronic pelvic pain. Eventually, doctors determined that she needed surgery to remove an ovarian cyst. Dr. Porter, the resident who preoperatively assessed Vanderpool, submitted the surgical plan for approval to Dr. Duma, the faculty doctor assigned to the clinic that day. Dr. Duma approved the plan. Dr. Porter informed Vanderpool that either Dr. Duma or Dr. Huppert would be participating in her surgery. On the day of the surgery, a resident informed Vanderpool that Dr. Huppert, a faculty doctor, would supervise the surgery. During surgery, Dr. Huppert had to leave so Dr. Duma was called in to finish the procedure. During the procedure, Vanderpool's ureter was cut and damaged. After the surgery, Vanderpool learned of Dr. Duma's participation. Before the surgery, she had never met Dr. Duma.
 {¶ 24} The appellate court determined that reasonable minds could only conclude that Vanderpool looked to the hospital, not Dr. Duma, to provide her with competent medical care. It noted that Vanderpool did not know of the independent relationship between Dr. Duma and the hospital. The court rejected the hospital's argument that Vanderpool knew that her care would be provided by a specific practitioner and not the hospital when she was informed two weeks earlier that either Dr. Duma or Dr. Huppert would be leading her surgical team. The court stated that the hospital "misunderst[ood] the meaning of notice in this context. Under Clark, notice means informing the patient that there is an independent relationship between the hospital and the doctor treating the patient, so that the patient understands that a specific doctor is responsible for her treatment and not the hospital. Notice is not achieved under Clark by merely informing the patient of the name of the doctor who will be treating the patient." Id. at ¶ 18. The court stated: "[T]he undisputed facts demonstrate that the hospital provided Vanderpool with her doctor." Id. at ¶ 19.
 {¶ 25} Judge Painter's concurring opinion simplified the issue in Vanderpool as follows:
"A woman goes to a hospital clinic. The clinic assigns her a doctor she has never met. And the hospital has the gall to deny liability on the ground that she was told the names of possible doctors before her surgery and she did not object. Horsefeathers.
If the patient seeks out the doctor, and the doctor chooses a hospital as the sight of treatment, the hospital is generally not liable for the doctor's negligence — the doctor is truly an independent contractor. When the patient seeks out the hospital, and the hospital provides a doctor, the hospital is liable for the doctor's negligence under long-standing and unquestionable agency principles. It is that simple."
Id. at ¶¶ 37 and 38.
 {¶ 26} We find Judge Painter's concurring opinion instructive. In the case sub judice, appellant came to the hospital for treatment. The hospital, after giving him a choice between two doctors, assigned a doctor that appellant had never met. We do not believe that appellant's choice between two doctors that the hospital offered to him must result in the conclusion that appellant looked to an individual physician, rather than the hospital, to provide him with competent medical care. In Judge Painter's words, appellant sought out the hospital for treatment and the hospital provided him with a doctor. Appellant did not seek out the doctor and then decide to have the doctor care for him at the hospital. Thus, we believe that the hospital may be held liable under the agency by estoppel doctrine.
 {¶ 27} The cases that Holzer cites to support its argument are inapposite. In Papai v. Cuyahoga Falls General Hosp. (Jan. 26, 2000), Summit App. No. 19474, the court determined that the plaintiff failed to show that the agency by estoppel doctrine applied. In Papai, the plaintiff underwent a gallbladder removal surgery. The hospital presented evidence that the doctor was an independent physician with privileges at the hospital, that he was not an employee of the hospital, and was not employed as an employee at the time of the plaintiff's injury. The plaintiff did not present any evidence to refute this testimony. Additionally, the plaintiff did not have any evidence that she looked to the hospital, rather than the doctor, for medical care. The court noted that all of her follow-up care was through her doctor, not the hospital.
 {¶ 28} We do not find Papai helpful in resolving the issue in the case at bar. Nothing in the court's decision reveals how the plaintiff's gallbladder removal surgery occurred, i.e., whether she pre-arranged it with her doctor or whether she presented to the hospital in an emergency condition. Without this knowledge, we are unable to agree with Holzer that Papai is similar to the case sub judice.
 {¶ 29} We find Butler v. Harper, Summit App. No. 21051, 2002-Ohio-5029, distinguishable because in Butler, the patient had a prior relationship with the physician. In Butler, the physician had treated the patient during an earlier pregnancy. When she became pregnant again, she sought the same physician's care. Throughout her pregnancy, she looked to the doctor for care and instructions. The court held that she could not seek hospital liability for any negligence when she looked to the doctor for care and merely viewed the hospital as the situs where the doctor would deliver her twins.
 {¶ 30} We believe that the case at bar is readily distinguishable from Butler. Unlike the patient in Butler,
appellant did not have a prior relationship with Dr. Dutta. He was not under Dr. Dutta's care at any time before his admission to Holzer. When he arrived at Holzer, he relied upon Holzer to provide him with medical care. The emergency room doctor evaluated him and then gave him a choice of two doctors. Holzer's offering of two doctors does not mean that appellant look to a particular doctor for care. We further disagree with Holzer that Mrs. Musick's experience with Dr. Dutta in the 1980s, when he operated on her mother, must result in the conclusion that appellant looked to Dr. Dutta for care. Mrs. Musick took her husband to the hospital for medical treatment. She did not take him there to see Dr. Dutta.
 {¶ 31} We also find Laderer v. St. Rita's Medical Ctr.
(1997), 122 Ohio App.3d 587, 702 N.E.2d 476, distinguishable. In Laderer, the plaintiff went to the hospital in labor. The hospital contacted her obstetrician who asked for the anesthesiologist on call. The plaintiff requested an epidural anesthesia and requested that either Dr. Kim or Dr. Moon administer it. The nurses advised her that they could contact only the anesthesiologist on call, Dr. Conger. The on call anesthesiologist stated that he "do[esn't] do epidurals." The plaintiff subsequently filed a medical malpractice complaint against the anesthesiologist and the hospital.
 {¶ 32} In ruling that the plaintiff was not entitled to a directed verdict on the agency by estoppel doctrine, the court stated that "a hospital may * * * avoid vicarious liability if the patient has notice or knowledge of the independent relationship between the hospital and the treating physician." Id. at 595 (citations omitted). The appellate court further noted that appellant looked to her obstetrician, with whom she had an existing and continuing relationship, to respond to her concerns about her medical care, including the type of anesthesia to be used and who was to administer the anesthetic.
 {¶ 33} By contrast, in the case at bar no evidence suggests that appellant knew of the independent relationship between the hospital and Dr. Dutta and that appellee looked to Dr. Dutta to respond to his medical needs. Holzer's argument that appellant's (through Mrs. Musick) choice of a physician means that he knew of the independent relationship is meritless.
 {¶ 34} We also find the following cases instructive in determining whether appellant looked to the hospital for care.
 {¶ 35} In Cox v. Ohio State Univ. Hosp. (1996),117 Ohio App.3d 254, 690 N.E.2d 552, Dr. Warren admitted the patient to Coshocton County Memorial Hospital after he complained of significant abdominal pain. The doctors suspected that he had an abdominal aortic aneurysm. Dr. Warren then transferred the patient to OSU for treatment. The patient subsequently died of cardiac arrest. The appellate court determined that the patient could not hold the hospital liable under an agency by estoppel theory. The court determined that he first looked to Dr. Warren, who then referred him to Dr. Smead, who incidentally practiced at OSUH.
 {¶ 36} In Wise v. Qualified Emergency Specialists, Inc.
(Dec. 17, 1999), Hamilton App. No. C-980802, the plaintiff sought treatment at the hospital after family members suspected she was suffering a stroke. Before going to the hospital, one of the plaintiff's daughter-in-laws called the plaintiff's family physician who informed the family to take her to the hospital immediately. At the emergency room, Dr. Hermecz, an employee of Qualified Emergency Medical Services, Inc. evaluated the plaintiff. Dr. Hermecz consulted with the plaintiff's family physician by telephone and diagnosed a stroke. The family physician came to see the plaintiff at the hospital and believed that her stroke was more serious than what Dr. Hermecz had relayed. After the plaintiff filed a medical malpractice action against the hospital, the hospital requested summary judgment and argued that it was not liable for any of Dr. Hermecz's malpractice because it was not his employer.
 {¶ 37} The appellate court agreed that the hospital could not be liable and reasoned that the family did not look to the hospital for care, but instead the family first looked to the plaintiff's family physician for care. Some testimony existed that the family physician intended to meet the family at the hospital. The family physician was listed on the hospital records as both the admitting and treating physician. "[I]t was not until after the family members contacted [the family physician] that they took [the plaintiff] to the hospital. Furthermore, it appears the [the family physician] was involved in both the diagnosis and treatment of [the plaintiff], including [her] admission to the hospital. Because [the plaintiff] did not go to the hospital until after first seeking treatment from [the family physician], it is apparent that [she] did not look to the [hospital] to provide treatment to her, but merely viewed the hospital as the location where she would be treated by [her family physician]."
 {¶ 38} In the foregoing cases, the patient did not first turn to the hospital for care, but instead first had contact with a physician before going to the hospital. See Stuller v. Price,
(holding that the plaintiff did not look to the hospital for care, rather than a particular physician, when the plaintiff had previously met the physician to evaluate whether he should undergo gastric bypass surgery). In the case sub judice, however, appellant first turned to the hospital for care. Thus, we agree with appellant that genuine issues of material fact remain regarding whether he looked to the hospital or to Dr. Dutta for competent medical care.
 {¶ 39} Moreover, we disagree with Holzer that Dr. Dutta's affidavit establishes that no genuine issues of material fact remain regarding whether appellant looked to the hospital for competent care. Dr. Dutta's affidavit only establishes the independent nature of his relationship with Holzer. The affidavit does not speak to whether appellant looked to Dr. Dutta or the hospital for medical care.
 {¶ 40} Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error, reverse the trial court's judgment and remand for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, P.J. McFarland, J.: Concur in Judgment Opinion
[1] We note that at oral argument appellee stated that it did not seriously contend that Holzer did not hold itself out to the public as a medical services provider.