**Mildred BOTNICK, et al., Plaintiffs**

**v.**

**ZIMMER, INC., et al., Defendants.**

**No. 1:03 CV 01794.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 27, 2007.

Jeffrey A. Leikin, Nurenberg, Paris, Heller & McCarthy, Cleveland, OH, for Plaintiffs.

Alison G. Fox, David R. Pruitt, Baker & Daniels, South Bend, IN, Edward J. Sebold, John Q. Lewis, Richard I. Werder, Jr., Jones Day, North Point, Cleveland, OH, J. Joseph Tanner, Baker & Daniels, Indianapolis, IN, for Defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION IN LIMINE TO EXCLUDE LEIGHTON E. SISSOM FROM TESTIFYING AND GRANTING DEFENDANT ZIMMER'S FEE REQUEST.

WELLS, District Judge.

Plaintiffs Mildred Botnick and her husband, Harry Botnick (collectively "plaintiffs" or "the Botnicks") brought this products liability action in state court against defendant Zimmer, Inc. (hereinafter "Zimmer") and unnamed John Does and/or John Does, Inc. for the design, manufacturing, marketing and administration of a Zimmer cable-ready bone plate (the "Device") surgically applied to Ms. Botnick's fractured femur. (Docket No. 1, State Complaint).[1] The Botnicks maintain the

---

1. The Court hereby dismisses the unnamed Jane and John Does. The Botnicks' failure to amend their complaint to name the still unnamed parties causes the complaint to fall outside the applicable limitations period with regard to those specific defendants. The Botnicks have satisfied neither the notice nor relation back requirements of Fed.R.Civ.P. 15(c)(3), which establishes ground for this Court to dismiss the suit against those unnamed parties. The John Does, John Does, Inc's., and John Does 1–10 have received neither actual nor constructive notice as deemed necessary under Fed R. Civ. P. 15(c)(3) and 4(m).

Device was defective and resulted in injury from which they now seek compensatory damages. In now seeking summary judgment of the Botnicks' claims, Zimmer maintains the fractured Device was not defective and the plaintiffs have not shown the Device proximately caused Ms. Botnick's injury. Zimmer further seeks to exclude the Botnicks' design engineer, Leighton E. Sissom, from testifying. Finally, Zimmer seeks execution of this Courts Rule 16(f) Order directing the defendant receive compensation from the Botnicks' counsel, Jeffrey Leikin. (Dockets 67, 73, 74, 75, 76). The Botnicks have filed responsive briefs (Dockets 68, 71, 80), to which Zimmer has replied (Dockets 70, 82). The matter is now ripe for adjudication.

For the reasons set forth below, the Court will grant Zimmer's motion to exclude the testimony of Leighton E. Sissom, grant Zimmer's Motion for Summary Judgment, and grant Zimmer's compensation request.

## I. Factual Background

On 2 August 2001, Mildred Botnick, age 76, slipped and fell in her kitchen. Ms Botnick is 5′2″ tall and weighs 195 pounds and she previously had undergone a right knee and right hip replacement. As a result of her fall, Ms. Botnick sustained a fracture of her femur requiring surgery. Dr. Robert Leb ("Dr.Leb") performed the surgery at Meridia South Pointe Hospital using a Bone Plate (hereinafter "the Device") manufactured and distributed by Zimmer, to assist in the healing process. A Zimmer representative was present during Ms. Botnick's surgery on 3 August 2001 and supervised the process of installing the Device. In addition, Dr. Leb testified that he correctly used the product and properly gave Ms. Botnick instructions to place no weight on her repaired and healing leg.

On 29 August 2001 Ms. Botnick underwent a second surgical procedure to replace the Device which had fractured. Dr. Leb inserted an identical Zimmer manufactured Device, the operation was completed without incident and the femur went on to heal.

The parties recognize the Device as a product intended to assist physicians during surgical procedures for fixation of long bone fractures, such as Ms. Botnick's. The purpose of the Device is to provide temporary fixation while the bone is healing following the surgical procedure to reduce the fracture. The intent of the Device is to provide a plate to withstand pressures while the fracture heals, as the Device has no purpose once the fracture has mended.

The Botnicks seek damages pursuant to the Ohio Products Liability Act ("OPLA"), alleging the Device was defective in manufacture or design or due to inadequate warnings, or for failing to conform to representations made by Zimmer.

## II. Whether Mr. Sissom's expert testimony fails to meet the admissibility standards outlined in Evidence Rules 702, 401, 402 and 403.

■ Relying on the standards enunciated by the United States Supreme Court for expert testimony in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the defendant urges the Court to exclude the testimony of the plaintiffs' sole expert witness, Leighton E. Sissom ("Mr.Sissom"). Zimmer maintains that Mr. Sissom lacks the expertise and, further, failed to exhibit reliable and relevant methodological principles when he examined and reported on the Device in controversy. The Botnicks respond that Mr. Sissom's extended experience in general engineering support his qualification as an expert witness on ortho-

pedic implants. They further maintain that Mr. Sissom's opinion are predicated on a scientifically valid methodology which is reliable for, and relevant to, the instant matter.

The Botnicks must show by a preponderance of the evidence the admissibility of Mr. Sissom's testimony. Fed.R.Evid. 104(a); *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Fed. R. Evid 702 provides the pertinent admissibility requirement:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. The Botnicks bear the burden of showing that Mr. Sissom: (1) has the expertise by virtue of his "knowledge, skill, experience, training, or education;" (2) can provide scientifically reliable testimony; and (3) has testimony relevant to this action.

A witness must first establish expertise through "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. For a Court to recognize a witness as a qualifying expert, the subject of the testimony must lie within the purview of the witnesses's expertise. 4 Weinstein's Fed. Evid. § 702.06[1]; *Redman v. John D. Brush and Co.,* 111 F.3d 1174 (4th Cir.1997). *Daubert* invests the Court with an obligation to determine the reliability and relevance of the expert's testimony, to evaluate the expert testimony offered against the data proffered to substantiate the opinion. *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786; *General Electric Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In this instance, Mr. Sissom's general experience in mechanical engineering fails to establish that he possesses the necessary "knowledge, skill, and experience, training, or education" to offer testimony on the medical Device at issue.[2] Mr. Sissom's expertise with regard to the Device consisted in his examination of the object and a review of the manufacturing specifications. (Docket 76, pp. 6–8; Docket 80, pp. 5–8). As other courts have observed, testimony of engineers may be excluded should it prove less than particular to the

---

**2.** Mr. Sissom maintains the following expertise to testify in this matter concerning the medical Device at issue:

*Areas of Expertise*
My testimony will be offered in the discipline of mechanical engineering, which has stems of Mechanical Systems and Energy Systems. My expertise includes: statics and dynamics of electro-mechanical systems, including structures; cause of origin of fires; machine design; safety; ergonomics; and human factors.

Sissom, Expert Report 7 June 2005, p. 4. The Sixth Circuit upheld a decision excluding Mr. Sissom on *Daubert* grounds from testifying in a matter involving an alleged defect in a light-

er in *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir.2000). In *Pride,* Mr. Sissom maintained the same type of expertise he now claims in the instant matter. *Id.* at 570. In excluding Mr. Sissom's testimony, the trial court in Pride found:

> Sissom's general engineer expertise is clearly not particular to the science involved in this case, and I am of the opinion that the plaintiff did not demonstrate that Sissom qualifies as an expert in the area of product defects and lighters by virtue of his "knowledge, skill, expertise, training, or education."

*Pride v. Bic Corp.,* 54 F. Supp 2d 757 (E.D.Tenn.1998).

science involved in the case. *See,* e.g., *Krueger v. Johnson and Johnson Prof'l, Inc.,* 160 F.Supp.2d 1026, 1031 (S.D.Iowa 2001) (excluding testimony after finding the expert's general knowledge of principles of metallurgy failed to take into consideration the specific application of the medical device which is inserted in a person's body). Mr. Sissom's general engineering expertise is not particular to the science involved in this case and the Botnicks have not demonstrated that Mr. Sissom qualifies as an expert able to render a reliable and relevant opinion bearing on design or causation issues in the area of product defects and medical devices by virtue of his "knowledge, skill, expertise, training, or education."

 Secondly, an expert's methodology must demonstrate scientific reliability. Fed.R.Evid. 702. *Daubert* establishes that an expert must employ a reliable methodology. *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786. Courts may exclude expert testimony in instances where the methodology employed is either unreliable or entirely absent. *See,* e.g., *Oddi v. Ford Motor Co.,* 234 F.3d 136, 156 (3rd Cir.2000) (affirmed district court's exclusion of expert testimony grounded on "haphazard, intuitive inquiry" instead of reliable methodology).

A review of Mr. Sissom's deposition testimony indicates that the methods he employed to reach his conclusions regarding the alleged defects in the Device fall short of the standard established in Rule 702 and *Daubert.* Mr. Sissom's methodology consisted of a review of the Scanning Electron Microscope ("SEM") photographs, a visual inspection which included no testing, no inquiry into failure rates, no knowledge of the Device's manufacturing process and no explanation for the alleged defect. (Sissom Depo., pp. 84, 93–94, 107–110). Further, Mr. Sissom did not consult the manufacturing specifications and relevant industry standard—ASTM F 138—to ascertain whether the Device was conforming. (Sissom Depo., pp. 83, 85).[3]

The absence of scientific tests or experiments which might enable Mr. Sissom to identify or quantify the stresses placed on the specific medical Device in question demonstrates an absence of a methodology. Such an intellectual rigor and analysis is necessary before this Court can place any reliability on Mr. Sissom's expert testimony. *See Fuesting v. Zimmer, Inc.,* 421 F.3d 528 (7th Cir.2005) (absence of studies, test or experiments to validate expert testimony fails to satisfy the reliability standard enunciated in *Daubert*). As Mr. Sissom's testimony lacks a method-

---

**3.** In their reply brief to Zimmer's motion to exclude and motion for summary judgment, the Botnicks characterizes this dispute as a "materials defect" case, noting that "the critical issue is not whether the Bone Plate is a medical device, how it was designed or used, but whether the materials that were used to manufacture the Bone Plate met certain specifications and industry standards for its intended use." (Docket 80, p. 2). Yet, the only evidence before the Court about whether the Device conforms to industry standards comes from the Zimmer's expert witness. (Docket 76: Declaration of Bradley E. James, Exh. G); see also Docket 69, Joint Stipulation of Facts. By recharacterizing the matter as a "materials defect" case, the Botnicks render Mr. Sis-

som's testimony wholly irrelevant as their expert admits to not consulting the industry standard in forming his opinion. Nor does Mr. Sissom's study address the manufacturing process:

Q: Do you have any understanding of how this particular device was manufactured?

A: No, sir. I think it was specified in some of the material I saw, maybe in Zimmer or maybe even in the Exponent report. But I'm not familiar with the manufacturing process. I just see the end result.

(Docket No. 76, Exh. B, p. 84). With this admission it appears clear that Mr. Sissom is not qualified, pursuant to rule 702 and *Daubert,* to testify about an alleged manufacturing defect in the Device.

ology upon which he might ground the reliability of his opinions, pursuant to Rule 702 and *Daubert,* the Court will exclude his testimony on the medical Device in controversy.[4]

■ Third, to be admitted under *Daubert,* Mr. Sissom's testimony must exhibit relevancy, connecting his theory of an alleged defect in the medical Device to Ms. Botnick's injury. *Daubert,* 509 U.S. at 591–93, 113 S.Ct. 2786. As this Circuit has explained, Daubert's relevance "requirement stems from Rule 702's requirement that the testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Thus, there must be a "fit" between the inquiry in the case and the testimony, and expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful. *United States v. Bonds,* 12 F.3d 540, 555 (6th Cir.1993) (citing *Daubert,* 113 S.Ct. at 2795).

The evidence indicates that Mr. Sissom's theory of the alleged defect fails to meet the relevancy burden laid down in *Daubert.* Mr. Sissom testified that he reviewed the photographs of the medical De-

vice, but had no familiarity with the manufacturing processes which generated the Device, alternative designs, or the use of the Device in the marketplace. Moreover, Mr. Sissom testified that he did not test the device *in situ* or interrogate the stresses on the Device. The Court finds Mr. Sissom's conclusory testimony is not driven, as it must be, by the context of the issues in this case. As this Court finds Mr. Sissom's expert opinion has no basis, other than mere hypothesis, his testimony will not be allowed before a jury.[5]

### III. Zimmer's Motion for Summary Judgment

#### A. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis

---

4. In their reply brief, the Botnicks provide an affidavit from Mr. Sissom addressing his methodology. (Docket 80, Exh. 5). The affidavit is untimely and stands in stark contrast to his earlier deposition testimony on methodology. (Sissom Depo., pp. 17, 56, 73, 98, 110–11). In addition, Mr. Sissom's affidavit testimony that he "had the results of the analysis performed," "peer-reviewed" by Dr. Dale Wilson, provides a contrasting gloss to his earlier deposition testimony that he merely discussed the document with Dr. Wilson but he "didn't see the document." (Sissom depo., p. 98). Mr. Sissom's affidavit finds no support in the record and it does not create a triable issue of fact. *Farrell v. Automobile Club of Michigan,* 870 F.2d 1129, 1132 (6th Cir.1989). *See also Weisgram v. Marley Co.,* 528 U.S. 440, 448, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000) ("It is implausible to suggest, post-*Daubert,* that parties will initially present less than their best expert evidence in

the expectation of a second chance should their first try fall.").

5. In addition, the probative value of Mr. Sissom's conclusory testimony has the potential of misleading the jury and will be excluded upon that basis as well. Mr. Sissom's evidence runs afoul of the relevancy and probative value requirements of Fed.R.Evid. 401, 402, and the introduction of his hypothesis without a reliable methodology implicates the jury prejudice concerns enunciated in Fed. R.Evid. 403. *Daubert* recognizes the duty of the trial court to reduce the risk of jury confusion by exercising just such control over expert witnesses. *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786; *Moisenko v. Volkswagenwerk Aktiengesellschaft,* 198 F.3d 246, 1999 WL 1045075 at *4 (6th Cir.1999) (finding that the absence of a reliable methodology forms the basis to exclude expert testimony as prejudicial under Rule 403).

for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (*quoting Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also*

*Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

## B. Law and Analysis

■ The Ohio Products Liability Act (OPLA), Ohio Revised Code §§ 2307.71—2307.80OH-ST-ANN, governs strict liability claims in Ohio. Under the OPLA, a plaintiff can recover on a product liability claim only if she establishes, "by a preponderance of the evidence, that the product was defective in manufacture or construction, was defective in design or formulation, was defective due to inadequate warning or instruction, or because it did not conform to a representation made by its manufacturer." *Indiana Ins. Co. v. General Elec. Co.,* 326 F.Supp.2d 844, 855 (N.D.Ohio 2004). The Botnicks' complaint avers violation of the OPLA by Zimmer for its alleged defective design, manufacture, and marketing of the medical Device

used to assist Ms. Botnick's healing. The Botnicks also aver common-law negligence and loss of consortium claims.

Zimmer moves for summary judgment, averring no genuine issue as to any material fact in any of the Botnicks' products liability, negligence or loss of consortium claims. In its brief for summary judgment, Zimmer proffered law and evidence in addressing the Botnicks' product liability claims of manufacturing defect, design defect, failure to warn, and misrepresentation, as well as the plaintiffs' common law claims of negligence and loss of consortium. The Botnicks replied in a memorandum addressing Mr. Sissom's qualifications and detailing their claim that the Device was materially defective.

The Botnicks agree with Zimmer with respect to all of their claims except their manufacturing defect products liability claim. (Docket 80). Stated otherwise, the Botnicks do not contest the entry of judgment in Zimmer's favor on the Botnicks' product liability claims of design defect, failure to warn, and misrepresentation, as well as the plaintiffs' common law claims of negligence and loss of consortium. The Botnicks do not address Zimmer's arguments regarding these claims in their Memorandum in Opposition. The Court will conclude the Botnicks have abandoned their claims of design defect, failure to warn, misrepresentation, negligence and loss of consortium, or otherwise failed to respond and create a genuine issue of material fact that necessitates a trial on those claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (the "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]"). As a result, the Court will grant Zimmer's motion for summary judgment for the Botnicks' claims of design defect,

failure to war, misrepresentation, negligence and loss of consortium. *See Scales v. Metropolitan Government of Nashville and Davidson County,* 2006 WL 1984434, *10 (M.D.Tenn. July 13, 2006) (granting the defendant's motion for summary judgment on claims the plaintiff failed to respond to or address in his memorandum in opposition); *Larimore v. Grant,* No. 3:03CV664–S, Slip Copy, 2006 WL 2037390, n. 3 (W.D.Ky. July 17, 2006) (declaring claim abandoned where the plaintiff failed to address the claim in brief in opposition to defendant's motion for summary judgment, but addressed other claims). *See also, Bradley v. Mary Rutan Hosp. Assoc.,* 322 F.Supp.2d 926, 931 n. 7 (S.D.Ohio 2004); *Kattar v. Three Rivers Area Hosp. Auth.,* 52 F.Supp.2d 789, 798 n. 7 (W.D.Mich.1999).

■ The now, lone, claim in dispute involves the Botnicks' contention that Zimmer's medical Device exhibited a "materials defect" because the Device met neither Zimmer's specifications nor industry standards.

■ Under Ohio Law a plaintiff must prove by a preponderance of the evidence: (1) that there was a defect in the product, (2) that the defect existed at the time the product left the manufacturer's hands; and (3) that the defect was the direct cause of the plaintiff's injuries. *Miller v. Uniroyal Technology Corp.,* 35 Fed.Appx. 216, 222 (6th Cir.2002) (citing O.R.C. § 2307.75(A)); *State Farm Fire & Cas. Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 5, 523 N.E.2d 489 (1988). In an instance such as the case at hand, the manufacturing defect must be adequately identified. Where a plaintiff has "no expert analysis or other evidence demonstrating that some aspect of the [manufacturing process] was defective, the claim is dismissed." *McGrath v. General Motors Corp.,* 26 Fed.Appx. 506,

511 (6th Cir.2002) (citing *State Farm Fire & Casualty Co.*)

 Under Ohio law, a plaintiff must present expert medical testimony to establish causation when she asserts a specific physical injury, the cause for which is not within common knowledge. *Conde v. Velsicol Chemical Corporation,* 24 F.3d 809 (6th Cir.1994); *Laderer v. St. Rita's Medical Ctr.,* 122 Ohio App.3d 587, 702 N.E.2d 476, 483 (1997) (finding "expert testimony is needed on complex issues outside the area of common knowledge, such as an injury's cause and effect."). To prove proximate causation for medical conditions or illnesses allegedly caused by a defective product, a plaintiff must show by a reasonable degree of medical certainty that the disease or injury was caused by the defective product. *Novak v. U.S.,* 865 F.2d 718 (6th Cir.1989) ("The burden is upon the plaintiff in this case to establish proximate cause, and because it involves a medical condition or illness, the plaintiff must show by a reasonable degree of medical certainty that the disease was caused by the negligence of the government and/or by its defective product.") and *Kerpelis v. Pfizer, Inc.,* 2004 WL 1326771 (Ohio App. 7th Dist. June 7, 2004) (granting summary judgment where the plaintiff failed to introduce expert testimony to establish that a prescription drug was defective and that it was the proximate cause of plaintiff's injury, finding those issues lie outside the knowledge of lay witnesses).

In this instance, the Botnicks have produced no expert testimony on medical causation and, as a result, their claim fails as a matter of law. The Botnicks assert that Mr. Sissom, a mechanical engineer allegedly qualified to submit expert testimony only on the Device itself, is also qualified to offer medical causation opinions in this matter. (Docket 80., p. 3). Even if the Court had not already excluded Mr. Sissom's design testimony on *Daubert* grounds, a review of his deposition testimony indicates he is not offering medical causation opinions in this case:

Q: Okay. And again, I'm just trying to get an understanding of your—what your testimony is in this case.

And its my understanding that it does not include medical causation testimony; that that would be something that a doctor would offer an opinion on; is that right?

A. That's correct.

(Docket 82, Exh. F, p. 29). The Court finds that Mr. Sissom, by his own admission, is not offering opinions establishing causation.

 In their responsive brief, the Botnicks also offer testimony from Ms. Botnick's treating physician, Dr. Leb, as expert opinion on medical causation. (Docket 80, pp. 17–18). Dr. Leb testified that Ms. Botnick's "anatomy and prior surgical procedures" would have contributed minimally to the "eventual failure of the" Device, though he does concede they "definitely had some relative impact on her healing or lack thereof." (Leb Depo., pp. 67–68). Holding in abeyance for the moment the question of whether Dr. Leb might even qualify as an expert on medical causation in this matter, the Court finds Dr. Leb's testimony equivocal at best. The Court finds no affirmative evidence from Dr. Leb that the alleged defect in the Device proximately caused Ms. Botnick's injuries. As to Dr. Leb's proffered posture as a causation expert, the Botnicks have not provided an expert disclosure report announcing any expert opinions from Dr. Leb, as required by Fed.R.Civ.P. 26. Without tendering the necessary expert disclosure report, the Botnicks' reframing of Dr. Leb's opinions as those of an expert on medical causation clearly exceeds the scope of his testimony. *See Harville v. Vanderbilt Uni-*

*versity, Inc.,* 95 Fed.Appx. 719, 724–25 (6th Cir.2003) (preventing the introduction of deposition testimony from the plaintiff's treating physician for failing to meet Rule 26 disclosure requirements).

The Court finds the Botnicks have failed to establish the necessary medical causation for their remaining products liability claim. Accordingly, the Court will grant the Zimmer's Motion for Summary Judgment dismissing this case in its entirety as a matter of law.

## IV. Court Ordered Sanction of the Botnicks' counsel, Jeffrey Leikin, pursuant to Fed.R.Civ.P. 16(f).

In a Memorandum and Order filed 13 May 2005 this Court applied sanctions to the Botnicks' counsel, Jeffrey Leikin ("Mr.Leikin"), pursuant to the Court's inherent authority and the authority of Fed. R.Civ.P. 16(f). The Court specifically ordered "attorney Jeffrey Leiken to pay costs associated with Zimmer's initial expert reports." (Docket No. 57 p. 4).

The Zimmer's counsel has provided an accounting of the expenses associated with the production of those initial expert reports. (Docket No. 67). The Zimmers request reimbursement of: (1) $4,650.00 for expenses incurred from Dr. William Maloney, chair of the Stanford University School of Medicine, in preparing his expert report (¶ 3); (2) $5,324.50 for expenses incurred from Dr. Bradley James, Principal Engineer at Exponent, in preparing his expert report (¶ 4); and (3) $4,279.60 for expenses incurred by the Zimmer's counsel in legal fees for assisting with the preparation of the expert reports of Drs. Maloney and James. (¶ 5). The Zimmer's counsel has provided evidence of the claimed expenses which total $14,254.10. (¶ 8).

The Botnicks' counsel opposes the Zimmer's request for expenses on three grounds: (1) the Court's Order (Docket No. 57) required payment of costs and not of attorney fees; (2) Dr. Maloney's expenses should be excluded because he did not require the Device to render his expert opinion; and, (3) the expenses requested are excessive in light of the $3,531.85 the plaintiffs were billed for their expert witness, Mr. Sissom. (Docket No. 68). Counsel requests an oral hearing to determine the reasonable expenses.

In reviewing the pertinent briefs, affidavit, expense logs, and this Court's several Orders addressing the plaintiff's counsel's lack of due diligence in failing to Inform the Court or opposing counsel that he had misplaced the Device, the Court finds no merit in any of Mr. Leikin's arguments. (Docket Nos. 40, 45, 57). The sanction imposed by this Court on Mr. Leikin, pursuant to Fed.R.Civ.P. 16(f), makes him responsible for the "costs associated with Zimmer's initial expert reports." (Docket No. 57, p. 4). First, Rule 16(f) enables sanctions for "reasonable expenses incurred because of any noncompliance with this rule" which explicitly includes attorney's fees. Second, Dr. Maloney's expenses were associated with the initial expert reports and must, therefore, be compensated by Mr. Leikin. That Dr. Maloney did not need to use the device for his report misses the point of the sanction imposed by this Court for the plaintiff's counsel's abject lack of due diligence. Finally, the Court does not consider Drs. James' and Maloney's expenses ($5,324.50 and $4,650.00, respectively) unreasonable in light of the plaintiff's expert's expense of $3,531.85.

Accordingly, the Court will grant the Zimmer's request for compensation from Mr. Leikin for the expenses the defendant incurred in preparing its initial expert reports in the amount of $14,254.10. The defendant's request comports with this

Court's 13 May 2005 Memorandum and Order. (Docket No 57). Because the Court finds the requested expenses reasonable, Mr. Leikin's request for an oral hearing on the matter will be denied. (Docket Nos. 68, 71).

## V. Conclusion

For the reasons set forth above, the Court finds no genuine issues of material fact in dispute. Zimmer is entitled to judgment as a matter of law on the Botnicks' statutory and common-law claims. Accordingly, the Court grants the defendant's motion for summary judgment on the entirety of the Botnicks' claims. In addition, the Court grants Zimmer's motion to exclude the testimony of Leighton E. Sissom, and grants Zimmer's request for $14,254.10 in compensation from Mr. Leikin, pursuant to this Court's prior Order.

IT IS SO ORDERED.